**UNITED STATES of America**

**v.**

**Richard T. DORMAN, also known as John Doe and James Ted Roberts, Joannie Glass Floyd, also known as Joannie Yvonne Roberts.**

**Nos. Cr–86–221–01–G, Cr–86–221–02–G.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

April 10, 1987.

---

Paul Weinman, Asst. U.S. Atty., Dept. of Justice, Greensboro, N.C., for plaintiff.

Gordon H. Brown, Winston-Salem, N.C.; William Sam Byassee, Greensboro, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ERWIN, District Judge.

This matter is before the court on motion to suppress evidence seized in searches of defendants' vehicles and domicile. The court heard argument of counsel for the defendants and the Government on March 3 and 4 in Winston-Salem. The facts disclose the following.

### Facts

On December 7, 1986, Deputy Steven Morrison of the Alamance County Sheriff's Department observed the defendant Dorman operating a black, 1986 Chevrolet pickup truck bearing a Texas license tag. The defendant Floyd occupied the passenger seat. The defendant Dorman made eye contact with Deputy Morrison, and Deputy Morrison testified that the defendant's "actions were out of the ordinary." Consequently, Deputy Morrison radioed the defendant's license tag to the dispatcher and received confirmation that the tag was stolen. At this point, the defendants had pulled off the road into a convenience store parking lot. Deputy Morrison approached the defendant Dorman and "asked him if he had any identification." The defendant Dorman then produced two identification cards with the name Robert Charles Scott and the defendant's photograph. When Deputy Morrison requested a driver's license, the defendant produced a California driver's license in the name of Robert Charles Scott, but this document bore a photograph which was obviously not the defendant. When queried about this apparent discrepancy, the defendant replied that the "California picture was taken before he had a stroke." Deputy Morrison observed defendant Floyd stuffing some-

thing in the glove compartment before he asked her to exit the truck and present him with some identification. She produced an Arkansas photograph identification card bearing the name Joannie Yvonne Roberts.

A search of the passenger area of the car by Deputy Morrison revealed a .22 caliber semi-automatic pistol lying underneath a pair of gloves. Deputy Morrison then placed the defendants under arrest. An inventory search of the pickup truck at the impound lot in Alamance County revealed a black pouch containing thirteen access devices in various names. Deputy Morrison also found more identification documents in various names located in the cab of the truck. Also discovered in the truck was an item known as a "slim jim," a flat, metal device designed to open car door locks.

Understandably, some confusion existed as to whom deputy Morrison arrested and the scope of possible criminal activity. After arresting the defendants, Deputy Morrison brought them before Alamance County Magistrate Doris Moon. Magistrate Moon testified that Deputy Morrison made her aware of the circumstances of the stop, arrest, and resulting inventory search. She testified further that in such situations, procedure dictated that detectives be called in. Magistrate Moon then telephoned Detective Ron Overman of the Alamance County Sheriff's Department and briefed him on the developments of the day. Detective Overman, informed of the facts and circumstances by Deputy Morrison upon arrival, applied for a search warrant from Magistrate Moon to search vehicles and a room located in a trailer where investigation had disclosed that the defendants were residing. The affidavit described the items sought as "STOLEN PROPERTY, CREDIT CARDS, I.D. CARDS, AND ETC."

Magistrate Moon signed the search warrant. However, before the warrant was issued, law enforcement personnel had arrived on the scene to be searched. They received permission from the owner of the trailer, Mr. Sterling Lester Carroll, to search without a warrant, but Detective Overman testified that he believed it would be appropriate to await the warrant. Warrant in hand, the officers searched the room in the trailer, a blue Chevrolet van, and a bronze Oldsmobile. The officers found 130 access devices in various names during the course of their search. In the cars, two more "slim jims" appeared. Additionally, the officers found a great deal of clothing in varying sizes and shapes and several luggage containers.

### Discussion

■ Two searches are complained of in the instant case. The first search, objected to by defendant Dorman solely, concerns Deputy Morrison's search of the pickup truck. Clearly under the facts of this case, the search of the pickup truck without a warrant was appropriate under both the automobile and inventory exceptions to the warrant requirement. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (*per curiam*); *see also Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

The search of the trailer and the two vehicles located on the premises is more problematic. The defendants object on two theories. First, the defendants argue that Magistrate Moon was neither neutral nor detached in the exercise of her functions on December 7, 1986.

The Warrant Clause of the Fourth Amendment further buttresses the rights of citizens to be free from governmental intrusion by its interpretation that the warrant be issued by "a neutral and detached magistrate." *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In explaining this requirement, the words of Justice Jackson, while oft-cited, have not lost their meaning over time:

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a

neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent. *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948). Further, "Once a lawful search has begun, it is also far more likely that it will not exceed proper bounds when it is done pursuant to a judicial authorization 'particularly describing the place to be searched and the persons or things to be seized.' " *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977).

The court strongly disapproves of some of the actions of Magistrate Moon in this matter. A magistrate has absolutely no business telephoning a detective and requesting that he report to the Sheriff's Department and assist in the investigation of a case. It well may be that "procedure" dictates that such a call be made, but such is the function of a fellow officer, not of a magistrate. "Judges and magistrates are not adjuncts to the law enforcement team." *United States v. Leon,* 468 U.S. 897, 917, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984).

■ It appears that a magistrate may lose her neutral and detached status in two ways. It is required "that the magistrate purport to 'perform his "neutral and de-

tached" function and not serve merely as a rubber stamp for the police.' " *Id.* at 914, 104 S.Ct. at 3416 (quoting *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964)); *see also United States v. Sager,* 743 F.2d 1261, 1266–67 (8th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). A prohibition also exists against the magistrate wholly abandoning her judicial function. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (in which the Town Justice actually accompanied and led police in an on-premises search for obscene materials at a book store); *compare United States v. Guarino,* 610 F.Supp. 371 (D.R.I.1984) (magistrate abandoned judicial role by issuing search warrant prior to making determination of obscenity) *with United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (magistrate impermissibly delegated an element of probable cause determination to investigating officers, but did not abandon his judicial role).

■ The court is of the opinion that the actions of Magistrate Moon do not rise to the level of those deeds which the Constitution prohibits in a magistrate. Nonetheless, the court expresses its dismay at a procedure which involves a judicial officer's summoning of a detective to assist in the investigation of a matter currently before that very magistrate.

The defendants argue secondly that the warrant is facially defective, in that there is no indicia of probable cause, thus rendering the scope of the search invalid and the fruits of the search subject to suppression. The Government admits that the warrant was technically deficient, in that it did not contain enough information linking the search of the pickup truck to the vehicles and the trailer. The Government counters by arguing that the officers were acting in good faith.

■ The first question the court must face is whether the defendants have standing to challenge the searches of the room in the mobile home and the two vehicles on the premises.

The defendant can contest the search and seizure on fourth amendment grounds only if "the disputed search and seizure has infringed an interest of the defendant which the fourth amendment was designed to protect." *Rakas v. Illinois,* 439 U.S. 128, 140 [99 S.Ct. 421, 429, 58 L.Ed.2d 387] (1978). The Supreme Court has articulated the appropriate inquiry to be whether the individual had a reasonable expectation of privacy in the area searched, not merely in the items found, *Rawlings v. Kentucky,* 448 U.S. 98, 104–106 [100 S.Ct. 2556, 2561–2562, 65 L.Ed.2d 633] (1980) and the burden is upon the defendant to prove his reasonable expectation of privacy. *Rakas,* 439 U.S. at 130, n. 1 [99 S.Ct. at 423, n. 1.] *United States v. Horowitz,* 806 F.2d 1222, 1224 (4th Cir.1986). The court holds that the defendants had a reasonable expectation of privacy in the areas searched. Therefore, the defendants have standing to contest the searches and seizures on Fourth Amendment grounds. *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

As the Government admits that the warrant itself was defective in its failure to link the evidence of crime uncovered in the search of the pickup truck (multiple false identification documents, multiple access devices in various names, and a tool commonly used to unlock automobile doors) with the probable cause to search the trailer and vehicles, the court must consider whether the officers acted in good faith.

█ The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). Since the inception of the exclusionary rule, the courts have historically struggled with the tenuous balance between protecting citizens from unwarranted governmental intrusion and excluding obvious evidence of criminal activity. "In *United States v. Leon,* the Su-

preme Court held that the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant which was issued by a detached and neutral magistrate but ultimately found to be invalid." *United States v. Edwards,* 798 F.2d 686, 690 (4th Cir.1986). The Supreme Court explained: "We have now reexamined the purposes of the exclusionary rule and the propriety of its application in cases where officers have relied on a subsequently invalidated search warrant. Our conclusion is that the rule's purposes will only rarely be served by applying it in such circumstances." *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The test for determining whether the officers relied in good faith upon the magistrate's determination of probable cause is one of objective reasonableness. *Id.* at 922, 104 S.Ct. at 3420.

The court went on to note that ordinarily the inquiry into the officer's good faith need not be all-consuming: "As we have already suggested, the good-faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice. When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Id.* at 924, 104 S.Ct. at 3421. However, the court added further guidance: "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. at 3422. " '[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Id.* at 922, 104 S.Ct. at 3420 (quoting *United States v. Ross,* 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982)). Since there has been an allegation in the case *sub judice* that Magistrate Moon was neither neutral nor detached, this court has

carefully examined the totality of the circumstances of the case to determine whether the officers acted in good faith. *Cf. Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (totality of circumstances used to determine probable cause). While this inquiry goes beyond the standard enunciated in *Leon,* the court is of the opinion that a complete inquiry into the facts and circumstances of the case is necessary when not only the soundness of the warrant but also the fundamental fairness of the issuing process is challenged as well.

 Having reviewed the evidence, the court can only conclude that the officers acted in good faith under the guidelines set out in *Leon.* The court also holds that Magistrate Moon had a substantial basis for concluding that probable cause existed. The warrant is undeniably sloppy; the product of exceedingly poor legal draftsmanship. However, it is also undeniable that Magistrate Moon was aware of the developments in the case. Indeed, she gave at least a shorthand description of the events of December 7 to Detective Overman when she telephoned him. Further, both Detective Overman and Mr. Carroll testified that Mr. Carroll gave permission for the officers to search the trailer without a warrant, but Detective Overman elected to delay the search while waiting for the warrant to be completed. This is precisely the type of prudence that the exclusionary rule seeks to encourage. *Cf. Stone v. Powell,* 428 U.S. 465, 539–40, 96 S.Ct. 3037, 3073–74, 49 L.Ed.2d 1067 (1976) (White, J., dissenting). To suppress the evidence at issue in this case would, at least theoretically, work to attempt to deter the law enforcement officers when they acted as they should. The court's holding today in no wise condones the poor preparation of search warrants. Despite the fact that law enforcement officers are often pressed for time, they need take only a few extra moments to draw a satisfactory affidavit which will withstand a potentially expensive challenge in court. Wherefore, based upon the foregoing,

IT IS HEREBY ORDERED that the defendants' motion to suppress is DENIED.