**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Luis Santiago RAMIREZ,**
**Defendant–Appellant.**

No. 94–2228.

United States Court of Appeals,
Tenth Circuit.

Aug. 8, 1995.

Edward O. Bustamante, Albuquerque, NM, for appellant.

Tara C. Neda, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with her on the brief), Office of U.S. Atty., Albuquerque, NM, for appellee.

* The Honorable James O. Ellison, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

Before TACHA and HOLLOWAY, Circuit Judges, and ELLISON,* District Judge.

TACHA, Circuit Judge.

A jury convicted defendant Luis Santiago Ramirez of possessing more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), conspiracy to possess more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and (b)(1)(B), and carrying or using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).[1] He was sentenced to a total of 123 months imprisonment and a term of supervised release. Defendant now appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

On June 11, 1993, a confidential informant purchased cocaine from defendant at a building at 838 Bridge Southwest in Albuquerque, New Mexico ("the building"). The controlled buy was part of a narcotics investigation conducted by officers from the Sandoval County Sheriff's Office, including Lieutenant Ramiro Flores. During the buy, officers observed defendant use a key to open the building, enter alone, leave the building, and hand cocaine to a confidential informant. Officers had observed defendant entering the building on two other occasions.

Ten days later, Officer Flores and another officer approached the building with a search warrant. Carmelo Rojas, one of Ramirez's codefendants, allowed the officers to enter. They conducted a search of the premises and found a triple-beam scale, plastic baggies, six ounces of cocaine, and a loaded revolver. Their search of Rojas uncovered $840 cash, including a $20 bill that the informant had given defendant during the controlled buy.

While the officers were still searching the premises, the telephone at the building rang. Officer Flores answered the phone, and the

---

1. All three counts also incorporated the charge of aiding and abetting in violation of 18 U.S.C. § 2.

caller asked in Spanish what was going on. The caller identification box indicated that the call had been placed from a pay phone at a gas station at the end of the block. Officer Flores called a nearby surveillance team, which apprehended defendant near the gas station and escorted him to the building. The officers searched defendant and found $940 cash and a key to the building on his person. The search of the building subsequently uncovered an additional kilogram of cocaine in a trash basket and three ounces of cocaine hidden in a pair of boots.

Defendant was charged with one count of possessing more than 500 grams of cocaine with intent to distribute, one count of conspiracy to do the same, and one count of using a firearm in relation to a drug trafficking offense. Defendant timely moved to suppress the evidence seized in the search of the building. The district court conducted a hearing on the matter and denied defendant's motion. Defendant then filed a motion in limine to exclude evidence of a prior drug-related arrest. The district court denied this motion as well.

Defendant's trial began October 4, 1993. On October 7, the jury returned a verdict of guilty on all three counts. Defendant then filed a motion to dismiss based on comments made by the prosecution during its closing argument, which the district court denied. On September 23, 1994, the court sentenced defendant to 63 months imprisonment on counts one and two, with the sentences to run concurrently, and 60 months for count three, with the sentence to run consecutively. Defendant now appeals.

## II

Defendant first contends that the district court should have suppressed the evidence seized at the building pursuant to the warrant because the issuing magistrate was not neutral and detached. Judge James Black-

mer, a New Mexico state district court judge, issued the warrant based on an application presented by Officer Flores. After reading Officer Flores's supporting affidavit, Judge Blackmer altered the warrant and that portion of the affidavit listing the items to be searched and seized. Specifically, he (1) inserted the word "and" between "person" and "place" on the warrant, (2) added the words "and Luis Ramirez himself" to the items to be searched on the affidavit, and (3) added the words "keys to the doors and/or locks on the doors at 838 Bridge, Southwest" to the items to be seized on the affidavit. Defendant argues that, because Judge Blackmer "substantially altered" the affidavit and the warrant, he abandoned his judicial role and was no longer neutral and detached from the investigation.[2]

■ On appeal from the denial of a motion to suppress evidence, we review the factual determinations made by the district court for clear error, and we view the evidence in the light most favorable to the government. *United States v. Bell,* 892 F.2d 959, 965 (10th Cir.1989), *cert. denied,* 496 U.S. 925, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990). A factual determination is clearly erroneous only if there is no factual support in the record or if we are "left with the definite and firm conviction that a mistake has been made." *LeMaire v. United States,* 826 F.2d 949, 953 (10th Cir.1987). The ultimate question of whether a search or seizure comported with the Fourth Amendment, however, is a legal issue, which we review de novo. *United States v. Lyons,* 7 F.3d 973, 975 (10th Cir.1993).

In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), Justice Jackson delivered perhaps the quintessential explication of the policies underlying the Fourth Amendment:

**2.** Defendant also contends that Judge Blackmer relied on an unrecorded conversation between Judge Blackmer and Officer Flores in altering the affidavit and the warrant in violation of Fed. R.Crim.P. 41 or N.M.R.Crim.P. 5–211(E). Judge Blackmer testified at the suppression hearing, however, that he relied on the narrative portion of the affidavit in making the additions. Defen-

dant has offered no evidence contradicting this testimony. Rather, he merely argues that Judge Blackmer conversed with Flores while making the changes. Because defendant has failed to introduce evidence showing that Judge Blackmer relied on unrecorded or unsworn statements in making his determination of probable cause, this claim must fail.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Id.* at 13–14, 68 S.Ct. at 369. For purposes of the Fourth Amendment, it is essential that a magistrate issuing a search warrant be neutral and detached rather than "an adjunct law enforcement officer." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979). It therefore follows that a search premised on a warrant issued by a magistrate who lacks such neutrality and detachment "stands on no firmer ground than if there had been no warrant at all." *Coolidge v. New Hampshire,* 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971).

■ Judge Blackmer's alteration of the search warrant does not call into question his neutrality or detachment in this case. Indeed, as a judicial officer, it is the duty of an issuing magistrate to ensure that a warrant corresponds to the content of the supporting affidavit. Determinations concerning the content of a supporting affidavit, however, are generally the province of law enforcement officers. Thus, Judge Blackmer's additions to the affidavit itself are more troubling, requiring more careful analysis.

Clearly, a magistrate's alteration of a warrant applicant's affidavit can constitute evidence that the magistrate abandoned her judicial role. We decline, however, to adopt any per se rule requiring suppression whenever a magistrate alters an affidavit. Whether a magistrate was neutral and detached in any particular case is necessarily an individualized and contextual inquiry. Courts must focus on the specific circumstances surrounding the issuance of the warrant and decide whether the magistrate "manifest[ed] that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." *Lo–Ji Sales,* 442 U.S. at 326, 99 S.Ct. at 2324.

In this case, the district court conducted an evidentiary hearing on the matter. That hearing revealed that Judge Blackmer read the narrative portion of Officer Flores's affidavit and "realized that there was sufficient probable cause to believe that Luis Ramirez himself would have possession of controlled substances, cocaine and/or paraphernalia for it." He also concluded that defendant's key to the building "was a material piece of evidence that would be useful in a possible criminal prosecution." Judge Blackmer accordingly altered the affidavit so as to permit the executing officers to search defendant himself and to seize defendant's key to the building. His additions to the affidavit were mere common sense extensions of the contents of the narrative portion of the same affidavit.

Under these circumstances, we agree with the district court that such common sense changes to the affidavit "do not indicate that Judge Blackmer breached his duty to be a neutral and detached magistrate." *Cf. United States v. Banks,* 539 F.2d 14, 16 (9th Cir.) (holding that the commanding officer of a military reservation was sufficiently neutral and detached because he had not "participated in any way in the investigation or prosecution" of the defendant), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *United States v. Dorman,* 657 F.Supp. 511, 514 (M.D.N.C.1987) (concluding that the magistrate did not abrogate her constitutional obligation to be neutral and detached even though she "summon[ed] ... a detective to assist in the investigation of a matter currently before [her]"), *aff'd,* 846 F.2d 74 (4th Cir.1988); *United States v. Evans,* 629 F.Supp. 1544, 1554 (D.Conn.1986) (holding that a magistrate who "suggested that the warrant application and warrant itself include [certain] items" was not so "involve[d] in the application for the search warrant as to disqualify [him] on grounds that he lacked the requisite neutrality"). First, the changes to the affidavit constituted rather minor additions to the list of items to be searched or seized. The Fourth Amendment does not require magistrates "to maintain Sphinx-like

inscrutability in passing on warrant applications." *United States v. Levasseur*, 699 F.Supp. 965, 988 (D.Mass.), *rev'd in part on other grounds*, 846 F.2d 786 (1st Cir.), *cert. denied*, 488 U.S. 894, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988). Second, each of the additions were based on Judge Blackmer's conclusion that the narrative portion of the affidavit provided probable cause to support the search or seizure of these items, and defendant does not challenge the search or seizure of these items on the ground that the warrant lacked probable cause. Finally, Judge Blackmer's altering of the affidavit is a far cry from the conduct or circumstances that the Supreme Court has held to compromise a magistrate's neutrality and detachment. *Cf. Lo–Ji Sales*, 442 U.S. at 327, 99 S.Ct. at 2324–25 (holding that the town justice who had issued a warrant acted as an "adjunct law enforcement officer" when he "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation"); *Connally v. Georgia*, 429 U.S. 245, 250, 97 S.Ct. 546, 548–49, 50 L.Ed.2d 444 (1977) (per curiam) (declaring unconstitutional a Georgia system under which magistrates were paid based on the number of warrants that they issued and therefore had a direct financial interest in approving warrant applications); *Coolidge*, 403 U.S. at 450, 91 S.Ct. at 2031 (holding that a state attorney general, "who was actively in charge of the investigation and later was to be chief prosecutor at the trial," was not neutral and detached for purposes of the Fourth Amendment).

We therefore find that Judge Blackmer did not abrogate his duty to be neutral and detached in passing on Officer Flores's warrant application. The district court did not err in refusing to suppress the evidence seized pursuant to the search of the building.[3]

---

3. Defendant relatedly contends that if the warrant was invalid, the officers lacked probable cause to arrest defendant because "the law officers at that time relied only on that basis for the seizure, arrest and search of [defendant]." Because we hold that the search warrant was valid, this argument must fail.

4. Rule 404(b) specifically states:

## III

Defendant's next claim concerns the trial court's admission of evidence that defendant was previously arrested for possession with intent to distribute cocaine. At trial, the government called Albuquerque Police Officer Thomas Garduno. Garduno testified that defendant had been arrested for possession with intent to distribute cocaine on July 11, 1992. Garduno also testified that, at the time of that arrest, defendant had been found in possession of eight ounces of cocaine and roughly $43,000 in cash. The district court admitted the evidence pursuant to Fed. R.Evid. 404(b). We review a trial court's evidentiary rulings only for an abuse of discretion. *United States v. Cestnik*, 36 F.3d 904, 906 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1156, 130 L.Ed.2d 1113 (1995).

Under Rule 404(b),[4] evidence of a defendant's prior crimes, wrongs, or acts is "admissible only for limited purposes and only when various prerequisites are satisfied." *United States v. Robinson*, 978 F.2d 1554, 1558 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993). As this court has stated on several occasions, Rule 404(b) requires that

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.), *cert. denied*, 502 U.S. 884, 112 S.Ct. 238, 239, 116 L.Ed.2d 194 (1991);

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*see also United States v. Johnson,* 42 F.3d 1312, 1315 (10th Cir.1994) (quoting the same), *cert. denied,* — U.S. —, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995); *United States v. Poole,* 929 F.2d 1476, 1481 (10th Cir.1991) (same). We address each element in turn.

First, the record reveals that the government introduced Garduno's testimony to show defendant's intent to possess and distribute cocaine, and that his participation in the conspiracy was knowing. This court has repeatedly held that "the use of prior drug involvement to show plan, motive or intent in a drug trafficking offense is appropriate." *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir.1992); *see also United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989); *United States v. Mora,* 845 F.2d 233, 237 (10th Cir.), *cert. denied,* 488 U.S. 995, 109 S.Ct. 562, 102 L.Ed.2d 587 (1988). Indeed, Rule 404(b) expressly provides that evidence of prior crimes is admissible for "proof of ... intent, ... plan, knowledge, ... or absence of mistake or accident." Fed.R.Evid. 404(b). The evidence of defendant's July 1992 arrest was therefore offered for a proper purpose.

Second, the evidence was clearly relevant. Each of the offenses for which defendant was charged required the government to prove either knowledge or intent with respect to defendant's possession of the cocaine, its distribution, or his participation in the conspiracy. Officer Garduno's testimony—that defendant previously had been arrested for drug trafficking and found in possession of eight ounces of cocaine and $43,000 in cash—was probative of defendant's knowledge and intent with respect to the offenses charged. *See United States v. McKinnell,* 888 F.2d 669, 677 (10th Cir.1989) (finding testimony of

former undercover officer that he had previously purchased cocaine from the defendant "sufficiently probative of [the defendant's] intent to support its admission"); *Mora,* 845 F.2d at 237 (holding that evidence of a prior uncharged drug transaction was "sufficiently related to the charge [of distributing cocaine] to establish intent, motive, and conspiracy and that the evidence did have real probative value"); *United States v. Brown,* 770 F.2d 912, 914 (10th Cir.1985) (holding that evidence of a defendant's prior arrest for marijuana possession "was highly probative of [the] defendant's scheme to possess and distribute marijuana"), *rev'd on other grounds sub nom. Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Third, the district court explicitly considered the evidence's probative value and prejudicial effect under Fed.R.Evid. 403.[5] The court concluded that the probative value of Garduno's testimony was not substantially outweighed by the danger of unfair prejudice to defendant. We afford trial courts broad discretion in making rulings under Rule 403. *United States v. Reddeck,* 22 F.3d 1504, 1508 (10th Cir.1994). We find no reason to disturb its conclusion here.

Finally, the district court gave the jury an appropriate limiting instruction. Both after Officer Garduno's testimony and at the conclusion of the trial, the court instructed the jury that it could consider evidence of defendant's July 1992 arrest only to determine whether defendant had the necessary criminal intent, whether he had a motive or opportunity to commit the crime, or whether he acted according to a plan.[6] This instruction appropriately constrained the jury's consideration of the evidence. *See Brown,* 770

**5.** Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

**6.** In fact, the limiting instruction given by the court was suggested by defendant's counsel. It stated:
[I]f you find beyond a reasonable doubt, that the Defendant Luis Ramirez did commit the acts charged in the indictment, then you may

consider evidence of the similar acts allegedly committed on other occasions to determine whether the defendant had a state of mind or intent necessary to commit the crime charged in the indictment, or whether the Defendant had a motive or the opportunity to commit the acts charged in the indictment, or whether the Defendant acted according to a plan or in preparation for commission of a crime.
These are the limited purposes for which evidence of other similar prior acts allegedly committed by Luis Ramirez on July 11, 1992 may be considered.

F.2d at 914 (upholding the admission of evidence of a defendant's prior drug arrest where the trial court instructed the jury that the evidence "was not to be considered as proof of the offense at trial, but for the limited purpose of determining motive, intent, knowledge, absence of mistake") (internal quotation marks omitted).

In sum, the admission of Officer Garduno's testimony satisfied all four elements of this court's test for admissibility under Rule 404(b). Moreover, we are mindful that this court has "long recognized the admissibility of previous wrongs and crimes in the context of narcotics violations, especially when the prior activity was close in time, highly probative, and similar to the activity with which the defendant is charged." *McKinnell*, 888 F.2d at 676. We therefore find that the district court did not abuse its discretion in admitting evidence of defendant's prior drug arrest.

## IV

■ Defendant next contends that a statement made by the prosecution during the government's closing argument amounted to prosecutorial misconduct. Specifically, the government's attorney stated:

I'm not here to explain court rules to you, but if [defendant's attorney, Mr. Finzel] wanted it, he could have it. If he wanted the government to explain the timing of when his client left with the [confidential informant] during that drug deal, the timing from the exit to the driveway, when Ray Flores picks him up again visually, if he wanted to hear the timing of the Chapala restaurant incident, why didn't he let Tony Lopez tell you that? I brought Tony Lopez on rebuttal, but without explaining court rules, Mr. Finzel didn't want you to hear it. He objected when I asked the question.

An allegation of prosecutorial misconduct presents a mixed question of fact and law that we review de novo. *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir.1994), *cert. de-*

*nied*, — U.S. ——, 115 S.Ct. 2278, 132 L.Ed.2d 282 (1995).

■ This court applies a two-step analysis in determining whether the government's behavior constituted prosecutorial misconduct. *United States v. Lonedog*, 929 F.2d 568, 572 (10th Cir.), *cert. denied*, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991); *United States v. Martinez–Nava*, 838 F.2d 411, 416 (10th Cir.1988). First, we examine "whether the conduct was, in fact, improper." *Lonedog*, 929 F.2d at 572. If so, "we must then determine whether it warrants reversal." *Id.* In this case, the district court concluded that the prosecutor's statement was, in fact, "improper counsel argument." It found that "the prosecutor's comments implicitly support[ed] the conclusion that if Tony Lopez had been allowed to testify concerning the timing of the controlled buy he would have been a credible, truthful witness." The court nonetheless concluded that the statement did not warrant reversal because, in the context of the entire trial, the error was harmless.

■ A prosecutor's improper statement to the jury is harmless unless "there is reason to believe that it influenced the jury's verdict." *United States v. Alexander*, 849 F.2d 1293, 1296 (10th Cir.1988) (internal quotation marks omitted). In assessing whether the misconduct had such an impact, we consider the trial as a whole, including "the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case." *Martinez–Nava*, 838 F.2d at 416. To warrant reversal, the misconduct must have been "flagrant enough to influence the jury to convict on grounds other than the evidence presented." *United States v. Lowder*, 5 F.3d 467, 473 (10th Cir. 1993); *see also United States v. Manriquez Arbizo*, 833 F.2d 244, 248 (10th Cir.1987).

■ The prosecutor's statement in this case was not so flagrant.[7] First, the statement was "singular and isolated," no more than a few brief comments in the course of a four-day trial. *See United States v. Peña*, 930 F.2d 1486, 1491 (10th Cir.1991); *Manriquez Arbizo*, 833 F.2d at 248. Second, the

---

7. Because we agree with the district court that the prosecutor's comments were not prejudicial to defendant, we do not reach the question of whether the comments were actually improper.

district court instructed the jury on more than one occasion that the lawyers' statements were not evidence, and that the jury had to decide the case on the basis of the evidence presented. *See Peña,* 930 F.2d at 1491. Finally, we agree with the district court that the record contained ample evidence for the jury to have found defendant guilty of the crimes charged beyond a reasonable doubt. *See id.; Manriquez Arbizo,* 833 F.2d at 248. The district court was therefore correct in concluding that the impact of the prosecutor's statement was harmless.

## V

Finally, defendant raises three additional arguments: (1) that the government failed to introduce sufficient evidence to sustain his conspiracy conviction; (2) that the evidence was insufficient to sustain his section 924(c) conviction; and (3) that the evidence seized from the building should have been suppressed because the officers executing the search violated the Posse Comitatus Act. We address each of these arguments in turn.

## A

 First, defendant contends that the record lacks sufficient evidence to sustain his conviction for conspiring to possess cocaine with intent to distribute under 21 U.S.C. § 846. Whether the government introduced sufficient evidence to sustain a defendant's conviction is a question of law that we review de novo. *United States v. Urena,* 27 F.3d 1487, 1489 (10th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 455, 130 L.Ed.2d 364 (1994). We will not overturn a jury's verdict of guilt, however, "unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Romero v. Tansy,* 46 F.3d 1024, 1032 (10th Cir.1995), *cert. denied,* — U.S. —, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). In our examination of the record, we view the evidence in the light most favorable to the government without "weigh[ing] conflicting evidence or consider[ing] the credibility of witnesses." *Kelly v. Roberts,* 998 F.2d 802, 808 (10th Cir.1993). Indeed, we will "accept the jury's resolution

of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan,* 982 F.2d 1483, 1487 (10th Cir.1993).

 To establish a violation of 21 U.S.C. § 846, the government must "prove that the defendant knew at least the essential objectives of the conspiracy and knowingly and voluntarily became a part of it." *United States v. Johnson,* 42 F.3d 1312, 1319 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995). The jury may infer an agreement constituting a conspiracy "from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *Id.* It may also "presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy." *United States v. Brown,* 995 F.2d 1493, 1502 (10th Cir.) (internal quotation marks omitted), *cert. denied,* — U.S. —, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). Moreover, as the Supreme Court recently held in *United States v. Shabani,* — U.S. —, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994), section 846 does not require the prosecution "to prove that a conspirator committed an overt act in furtherance of the conspiracy." *Id.* at —, 115 S.Ct. at 383.

 The record in this case reveals sufficient evidence for a rational trier of fact to have concluded that defendant knew the essential objectives of the conspiracy and voluntarily became a part of it. First, the record shows that all three defendants lived on a ranch together, that all three possessed keys to the building where the cocaine and drug paraphernalia were found, and that Officer Flores had previously observed defendant and codefendant Carmelo Rojas enter the building together. Second, Officer Flores testified that, in searching the building, he seized from Rojas a marked $20 bill that the confidential informant had given defendant in the controlled buy of cocaine June 11, 1993. Finally, as discussed earlier, Officer Garduno testified that defendant had previously been arrested for drug trafficking and had been found in possession of eight ounces of cocaine and roughly $43,000 in

cash, indicating that defendant knew the objectives of the conspiracy. Viewing the record in the light most favorable to the prosecution, we conclude that there was sufficient evidence for the jury to have found beyond a reasonable doubt that defendant conspired to possess cocaine with the intent to distribute.

## B

Defendant next claims that the evidence was insufficient to sustain his conviction under 18 U.S.C. § 924(c)(1) for using or carrying a firearm during and in relation to a drug trafficking offense. Section 924(c) states that "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years." 18 U.S.C. § 924(c)(1).

■ This court has held that, for purposes of section 924(c), a defendant "uses" a firearm "during and in relation to" a criminal undertaking when the firearm "(1) is readily accessible, (2) is an integral part of the criminal undertaking, and (3) increases the likelihood that the criminal undertaking would succeed." *United States v. Hall,* 20 F.3d 1084, 1088–89 (10th Cir.1994). To show that a firearm was readily accessible, the government must demonstrate that it "was available to the defendant in the vicinity where the drug trafficking offense took place." *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991); *see also United States v. Coslet,* 987 F.2d 1493, 1495 (10th Cir.1993) (" 'Access' to a firearm requires only that the weapon be available to the defendant in the vicinity where the drug offense occurred.").

■ The government can demonstrate the ready accessibility of a firearm by showing a close proximity between the firearm and the drugs. *Hall,* 20 F.3d at 1089. For instance, in *United States v. Conner,* 972 F.2d 1172 (10th Cir.1992), this court held that evidence that the drugs were "directly below the firearm" was "sufficient for a jury to find that [the defendant] intended the weapon to be readily available for use during the drug transaction." *Id.* at 1174. And in *United States v. Hager,* 969 F.2d 883 (10th Cir.),

*cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992), we upheld a defendant's conviction under section 924(c) where the firearms were in close proximity to the drugs and there was substantial evidence connecting the defendant to the building where the drugs and the firearm were seized. *Id.* at 889.

■ In this case, Officer Flores testified that the officers discovered the firearm on top of the water heater right next to six ounces of cocaine. This testimony alone is sufficient evidence for the jury to have concluded that the weapon was in close proximity to the drugs and therefore "readily accessible" for purposes of section 924(c).

The two remaining elements of the section 924(c) test—that the firearm be an integral part of the criminal undertaking and that it increase the likelihood of the undertaking's success—require "a nexus between the readily accessible gun and the offense." *United States v. Dahlman,* 13 F.3d 1391, 1401 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). As an appellate court reviewing for sufficiency of evidence, "we presume a nexus between a firearm and a drug trafficking offense when an individual with ready access to a firearm is involved in such an offense." *United States v. Holland,* 10 F.3d 696, 699 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994); *see also Coslet,* 987 F.2d at 1495; *Parrish,* 925 F.2d at 1298. "However, a defendant charged with a drug trafficking offense may overcome this presumption by presenting some evidence suggesting the firearm was present for a reason other than facilitating the drug operation." *Parrish,* 925 F.2d at 1298; *see also Coslet,* 987 F.2d at 1495.

In this case, defendant has offered no other explanation for the presence of the firearm. We therefore conclude that there was sufficient evidence for the jury to convict defendant of using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

## C

■ Finally, defendant argues that, because an Air Force sergeant took photo-

graphs of the items seized at the building and videotaped the arrest scene, the officers conducting the search violated the Posse Comitatus Act, 18 U.S.C. § 1385,[8] and the evidence seized during the search should therefore have been suppressed. Defendant, however, failed to raise this argument in his motion to suppress evidence before the district court. The Federal Rules of Criminal Procedure require defendants to make motions to suppress evidence prior to trial, Fed. R.Crim.P. 12(b)(3), and dictate that the failure to do so constitutes a waiver thereof, Fed.R.Crim.P. 12(f). And this court has held that Rule 12(f)'s "waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion." *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir.1991), *cert. denied*, 502 U.S. 1118 (1992).

Having failed to include his Posse Comitatus Act argument in his motion to suppress, defendant has waived the claim. We therefore will reverse the district court only if its admission of the evidence constituted plain error. *United States v. Davis*, 55 F.3d 517, 520 (1995). That is, the admission of the evidence must have been erroneous, and it must have "affect[ed] the fundamental right of . . . defendant to a fair and impartial trial." *Id.* We find no such error here.

## VI

For the aforementioned reasons, we find no error in the judgment of the district court. The magistrate was sufficiently neutral and detached, the district court did not abuse its discretion in admitting evidence of defendant's prior drug arrest, and the prosecutor's statement during closing argument was not prejudicial to defendant. In addition, the record contains sufficient evidence to sustain defendant's conspiracy and firearm convictions, and defendant has waived his Posse Comitatus Act claim. The judgment of the district court is therefore **AFFIRMED.**

HOLLOWAY, Circuit Judge, concurring and dissenting:

I concur in the result reached by the majority opinion and much of its analysis. However, I am unable to join in the opinion fully as written because of my disagreement with the majority's analysis of the issue of alleged violation of the constitutional requirement that a neutral and detached magistrate determine whether probable cause has been shown for the warrant sought. My analysis, however, leads me to the same result that the majority reaches on this issue and I also would reject the claim that reversal is required because the judge who issued this warrant, on his own initiative, made significant additions and alterations to the affidavit and warrant. On the other issues presented, I am in agreement with the majority opinion and its affirmance of the judgment.

### I

### A

Turning to the Fourth Amendment issue raised, the principal claim is that the magistrate who issued the search warrant was not neutral and detached; thus the warrant was invalid and suppression of all evidence seized in the searches based on the warrant was required. The underlying facts about this issue are not in dispute and they are covered by the testimony of the state district judge who issued the warrant, VI R. (Rojas Record) at 5–13, and of Officer Flores, who presented his affidavit and obtained the search warrant. II Supp.R. at 7–16.

The troubling facts are stated clearly in the majority opinion. Majority Opinion at 940. After reading the affidavit of Officer Flores, the state judge who issued the warrant altered the warrant and the portion of

---

8. The purpose of the Posse Comitatus Act is to "limit 'the direct active use of federal troops by civil law enforcement officers' to enforce the laws of this nation." *United States v. Hartley*, 796 F.2d 112, 114 (5th Cir.1986) (quoting *United States v. Red Feather*, 392 F.Supp. 916, 922 (D.S.D.1975)). The version in force at the time of the challenged search stated: "Whoever, ex-

cept in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both." 18 U.S.C. § 1385 (amended 1994).

the affidavit listing the items to be searched for and seized. Specifically, the judge inserted the handwritten word "and" between the words "person" and "place" on the warrant, and put his initials immediately underneath that insertion. To the warrant affidavit the judge also added the handwritten words "and Luis Ramirez himself: J.F.B." (the initials of the issuing judge), by which were written the initials "R.F." (of Officer Ramino Flores). Moreover the judge added to the affidavit, which was attached to the search warrant and referred to by it, the words "keys to the doors and/or locks on the door(s) at 838 Bridge, SW." The initials "R.F." (of Officer Flores) and "J.F.B." (of the issuing judge) were also added. I Supp.R., Affidavit at 1. The effect of the alterations and additions by the judge was to command the seizure and search of defendant Ramirez himself, and a search for keys to doors and locks—significant further steps which the affidavit and warrant as submitted to the judge did not do.

The state judge who issued the warrant testified at the suppression hearing. He said that when he read the narrative portion of the affidavit, he "felt that those [items he added] would be concealed on the person of Luis Ramirez." VI R. (Rojas Record) at 12. He acknowledged that he made the handwritten additions himself, with his insertion of the wording "and Luis Ramirez himself," his addition of "and" between "person" and "place," and his addition of the words "Keys to the doors and/or locks on the doors at 838 Bridge ...," which the warrant commanded to be searched for. *Id.* at 8. It is undisputed, as the judge testified, that he did not participate in any way in the actual execution of the warrant in question. *Id.* at 13.

As the majority opinion notes, in the instant case the federal district judge made written findings following the suppression hearing. He found that (1) the changes, noted above, did not indicate that the state judge breached his duty to be a neutral and detached magistrate, citing *Lo–Ji Sales v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), and *United States v. Levasseur,* 699 F.Supp. 965 (D.Mass.1988); (2) the state judge's conduct amounted to a judicial review of the affidavit and a neutral

determination on probable cause to search defendant Ramirez's person; and (3) in truth, the state judge fulfilled his judicial obligation to review the affidavit and determine whether probable cause existed to justify the issuance of a search warrant. Order at 1–2.

B

The troubling question is, having performed his proper judicial duty to review the affidavit and determine whether probable cause was shown, why should the issuing judge have made the significant changes and additions to the affidavit and the search warrant? The majority opinion dismisses this concern, viewing the insertions into the warrant and the affidavit as "common sense extensions" and "rather minor additions." Majority Opinion at 941. I cannot agree with that analysis in light of clear pronouncements by the Supreme Court and other courts that the Fourth Amendment requires a determination and action by a neutral and detached magistrate.

Nevertheless I join in the result of the majority opinion on this issue. This concurring and dissenting opinion will explain my analysis in three steps: First, my reasons for rejecting the majority opinion's dismissal of the constitutional claim as involving mere "common sense extensions" and "minor additions" to the warrant and affidavit; second, my analysis that nevertheless the denial of the motion to suppress should be upheld as to the evidence (the cocaine, the scale, the plastic baggies and the loaded revolver) obtained in the search of the building at 838 Bridge on consideration of the valid portions of the warrant and affidavit, after redacting the invalid additions made by the state judge; and third, my reasoning that the denial of the motion to suppress as to the evidence seized from Ramirez's person should be upheld because probable cause existed, independently of the warrant and affidavit, for the seizure of Ramirez, and that therefore the search of his person was valid as a search incident to a lawful arrest.

## C

### 1

First, my disagreement is basically with the analysis of the majority opinion at pages 941–42, rejecting the constitutional claim of violation of the mandate that a neutral and detached magistrate make the determination on probable cause and the issuance of a search warrant. There the majority opinion, among other things, dismisses the additions to the affidavit and warrant as "mere common sense extensions of the contents of the narrative portion of the same affidavit." *Id.* at 941. The opinion says that such common sense changes do not indicate that the state judge "breached his duty to be a neutral and detached magistrate," *id.* at 941, and that the insertions made in the affidavit "constitute rather minor additions to the list of items to be searched or seized." *Id.* at 941.

I disagree. When the state judge inserted the provision that Ramirez himself should be seized and searched, and when he ordered that the search include keys to the doors and locks at 838 Bridge, he made significant substantive additions to the affidavit and the warrant. In doing so, the judge was not then conforming to his prescribed constitutional duty "[s]ince he was not the neutral and detached magistrate required by the Constitution." *Coolidge v. New Hampshire*, 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971); *see Lo–Ji Sales, Inc.*, 442 U.S. at 327, 99 S.Ct. at 2324–25; *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783 (1972) ("[A]n issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether

probable cause exists for the requested arrest or search."). Indeed, in *Coolidge*, the Court voided a search warrant because it was issued by a state attorney general who was actively in charge of the investigation and later was to be the chief prosecutor at trial. *See also Welsh v. Wisconsin*, 466 U.S. 740, 748 n. 10, 104 S.Ct. 2091, 2097 n. 10, 80 L.Ed.2d 732 (1984) (requiring inferences from warrants to be drawn "by a neutral and detached magistrate instead of by the officer engaged in the often competitive enterprise of ferreting out crime"); *Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) ("The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search.").[1]

Turning to other cases concerning the requirement of a neutral and detached magistrate, I am not persuaded that *United States v. Banks*, 539 F.2d 14 (9th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976), cited by the Majority Opinion at 941, helps the government here. There a commanding officer was held sufficiently neutral and detached to issue a search warrant. The challenge to his action was general, and the argument was merely that such an officer could in no way be neutral and detached due to his position. Here, however, specific actions of the state judge in making the changes in the affidavit and warrant, on his own initiative, raise serious concerns. *United States v. Dorman*, 657 F.Supp. 511 (M.D.N.C.1987), *aff'd*, 846 F.2d 74 (4th Cir. 1988) (Table), is also relied on by the majori-

---

1. *See also State v. Valenzuela*, 130 N.H. 175, 536 A.2d 1252, 1266 (1987) (Justice Souter stating for the court that "[W]hatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement.") (quoting *Shadwick v. City of Tampa*, 407 U.S. at 350, 92 S.Ct. at 2123), *cert. denied sub nom. Young v. New Hampshire*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988); *State v. Stanley*, 167 Ariz. 519, 526, 809 P.2d 944, 950–51 (disapproving magistrate's actions but upholding warrant in circumstances), *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991); *Gardner v. State*, 567 A.2d 404, 411 (Del.1989) (upholding warrant but noting "[t]he judge or magistrate must maintain his

impartiality and not ally himself with one party"), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990); *State v. Wotring*, 167 W.Va. 104, 279 S.E.2d 182, 188 (1981) ("While we affirm the lower court on this issue, *we are troubled by the fact that the justice of the peace worked with the State Police in preparing the warrant.*" (Emphasis added.)). *But see State of Tennessee v. Nolan*, 617 S.W.2d 174, 175–76 (Tenn.Ct.Crim.App.1981) (rejecting complaint concerning "certain [unspecified] deletions and additions made by the issuing magistrate...." to an affidavit; action of the magistrate upheld on reasoning that it did not detract from his neutrality, but demonstrated it).

ty opinion. While *Dorman* upheld a conclusion that the actions of a magistrate did not rise to the level of actions prohibited by the Constitution, the judge reviewing the issue seriously questioned the magistrate's actions:

> The court strongly disapproves of some of the actions of Magistrate Moon in this matter. A magistrate has absolutely no business telephoning a detective and requesting that he report to the Sheriff's Department and assist in the investigation of a case. *It well may be that "procedure" dictates that such a call be made, but such is the function of a fellow officer, not of a magistrate. "Judges and magistrates are not adjuncts to the law enforcement team."* United States v. Leon, 468 U.S. 897, 917, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984).

657 F.Supp. at 514 (emphasis added).

The judgment we are making here involves a fundamental ingredient of Fourth Amendment protection. We must not dismiss the acts in question as insignificant, nor condone them by a precedent which may invite disregard of the strict requirement of neutrality and detachment of a magistrate issuing a warrant. I am convinced that the challenged actions of the state judge in making alterations and additions to the warrant and affidavit were violations of the standard of conduct required of a neutral and detached magistrate. Therefore I cannot agree with the majority opinion's analysis and its conclusion that the alterations and additions to the warrant should be upheld.

2

Second, despite my disagreement with the analysis in the majority opinion on the neutral and detached magistrate issue, I join in the affirmance of the denial of suppression. In my opinion, the proper remedy for the invalid additions made here by the state judge to the affidavit and warrant does not require the invalidation of the warrant and search as a whole. Instead I believe the proper remedy is that the warrant and affidavit be redacted and that only the evidence obtained under the unlawful additions to the affidavit and warrant be set aside. This would follow the practice approved in *Franks*

v. Delaware, 438 U.S. at 171–72, 98 S.Ct. at 2684–85. There, the Court said that when a proper showing is made of deliberate falsehood or reckless disregard for truth in an affidavit supporting a search warrant, then, after setting aside the material that is the subject of the alleged falsity or disregard for truth, if there remains sufficient further information to support a finding of probable cause, no hearing is required.

Following a similar procedure here, only the evidence obtained as a result of the improper additions to the warrant and affidavit would be inadmissible. I feel this procedure is proper here since this case does not involve circumstances like those in *Coolidge* where a warrant was rejected in its entirety because it had been issued improperly by the chief investigator and state prosecutor in the case—obviously tainting the affidavit and warrant as a whole. 403 U.S. at 453, 91 S.Ct. at 2031. Here the state judge's office and his duty to judge whether there was probable cause for a warrant did not demonstrate such a fundamental conflict of interest as *Coolidge* involved. As the Court noted in *Coolidge,* 403 U.S. at 450, 91 S.Ct. at 2029–30, where the State's chief investigator and prosecutor issued the warrant, "there could hardly be a more appropriate setting for a *per se* rule of disqualification...." No such *per se* rule for invalidation of everything the state judge did is justified here.

It was only when the particular actions by the state judge were taken in making the invalid additions to the affidavit and warrant that the constitutional violation occurred. These discrete actions by the state judge distinguish this case from *Lo–Ji.* There the Court noted that because of the overall conduct of the magistrate, "[i]t is difficult to discern when he was acting as a 'neutral and detached' judicial officer and when he was one with the police and prosecutors in the executive seizure...." 442 U.S. at 328, 99 S.Ct. at 2325.

Under the *Franks* rationale, here I would reject reliance only on the portions of the affidavit and warrant invalidly added by the judge. To me, this is a reasonable constitutional accommodation, protecting the Fourth Amendment right of the defendant while

avoiding an unnecessary wholesale invalidation of the warrant and suppression of evidence.

### 3

Third, while I would reject reliance on the improperly added portions of the affidavit and warrant, I would uphold the denial of suppression of evidence obtained in the search of Ramirez and the fruits of that search. I would do so on the alternative basis argued by the government that even if the warrant for the search of Ramirez was defective, his arrest was supported by probable cause and thus the subsequent search was a lawful search incident to arrest. Appellee's Answer Brief at 17.

*United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), supports the arrest of Ramirez which was made in a public place in daytime. *Watson* noted that history clearly supports warrantless felony arrests in public places, and that such arrests need only be supported by probable cause at the time of arrest. *Id.* at 417, 96 S.Ct. at 824. Neither an arrest warrant nor exigent circumstances is required. *Id.* at 423, 96 S.Ct. at 827–28; *see also United States v. Wright,* 932 F.2d 868, 877 (10th Cir.) ("Law enforcement personnel may arrest a person without a warrant if there is probable cause to believe that person committed a crime."), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991); *United States v. Maez,* 872 F.2d 1444, 1449 n. 7 (10th Cir.1989) (a warrantless arrest in public with probable cause does not violate the Fourth Amendment, even though exigent circumstances do not exist).

Here in his order denying the motion to suppress, the district judge cited *Watson* and found:

> The officers who arrested defendant were aware of a controlled drug transaction consummated in the recent past at 838 Bridge, SW, between defendant and a confidential informant. Moreover, the officers knew prior to defendant's arrest that cocaine and a loaded firearm were found at 838 Bridge, SW, based on the successful execution of the search warrant. These factors rise to the level of probable cause and justify the officers' warrantless arrest of

defendant. "The facts and circumstances within the knowledge of the agents and those of which they had reasonably trustworthy information were sufficient to warrant an objective belief that a crime had been committed." *United States v. Skowronski,* 827 F.2d 1414, 1417 (10th Cir.1987). The evidence seized from defendant's person was legally obtained per the dictates of the search warrant, *and alternatively, was validly seized pursuant to a constitutionally permitted search incident to a lawful arrest.*

Order of September 24, 1993 at 2–3 (emphasis added).

I agree with the trial judge to the extent that he found that the evidence seized from Ramirez's person was validly seized pursuant to a constitutionally permitted search incident to a lawful arrest. The valid search incident to the lawful arrest of Ramirez thus supports the admissibility of the key and cash found on his person. The remaining evidence—the cocaine, the scale, the baggies and the loaded revolver—was obtained by a valid search under portions of the search warrant which were not affected by the invalid additions. Therefore all of the evidence in question was properly held admissible, and the motion to suppress was correctly denied.

### II

In sum, I respectfully dissent from the analysis of the majority opinion on the constitutional claim of violation of the mandate concerning a neutral and detached magistrate. However, as is explained above, on the basis of a different analysis I reach the same result on the issue as does the majority opinion, namely that suppression was not required. On all other issues, I concur fully in the analysis and conclusions of the majority opinion.