**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Tyrone Melvin SERVANCE, JR.,**
**Defendant–Appellant.**

**No. 03–4111.**

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 30, 2004.

Decided: Jan. 12, 2005.

---

**ARGUED:** Clarke Francis Ahlers, Columbia, Maryland, for Appellant. Martin Joseph Clarke, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge KING wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

KING, Circuit Judge:

Appellant Tyrone Servance seeks reversal of the convictions and sentences imposed on him in the District of Maryland for multiple drug and firearms offenses. Servance contends that the district court erroneously denied his motion to suppress certain evidence—including drugs, ammunition, a bullet-proof vest, and personal papers—seized pursuant to a warranted search. Specifically, he maintains, as he did in the district court, that the state court's issuance of the search warrant failed to comport with the Fourth Amendment's requirement of probable cause. Although not raised below, Servance also contends on appeal that the state judge failed to act in a neutral and detached manner in issuing the warrant, and that the Government failed to comply with its Fifth Amendment disclosure obligations concerning information used to support issuance of the warrant. As explained below, we affirm.

## I.

### A.

Servance was indicted on June 11, 1998, along with his co-defendant Marc Glover, for multiple offenses, including, as to Servance: conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; possession with intent to distribute controlled substances, in contravention of 21 U.S.C. § 841(a)(1); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g). Superseding indictments were returned and filed in late 1998 and again in June of 2002, but they made no substantive changes to the offenses alleged against Servance, recharging him with the same four offenses.

After being first indicted in federal court, Servance sought to suppress the evidence seized by the authorities in their May 1998 warranted search of his Baltimore apartment, on the ground that issuance of the warrant was not supported by probable cause. The search warrant was issued by Judge James Smith of the Circuit Court for Baltimore County a few minutes before midnight on May 7, 1998. The proceedings with respect to the warrant occurred at Judge Smith's residence and lasted over an hour. The warrant was based on the affidavit of Trooper Efrain A. Rosario, a Maryland State Trooper assigned to the FBI's Violent Crime Safe Streets Task Force ("VCSSTF"). The affidavit had been partially prepared earlier that evening by Trooper Rosario, with the assistance of two other VCSSTF agents. Prior to his execution of the affidavit before Judge Smith, Trooper Rosario responded to inquiries and instructions from the Judge, and augmented and corrected his draft document. In summary, the affi-davit set forth the following basis for the search warrant:

- Servance had been first observed by the authorities on May 7, 1998, driving a 1995 black Mazda at about 11:50 a.m. Servance and Marc Glover were followed through Baltimore City and County to the Spring Valley Apartments in Cockeysville (Baltimore County), Maryland. They were then observed using a key to enter the apartment building at 1 Meadow Grass Court. The two men remained inside the apartment building for more than three and one-half hours.

- A resident of the apartment building identified a picture of Servance as a resident in Apartment L of the building "since at least December, 1997."

- Police records revealed that Servance's driving license had been suspended by the state and that he had "at least one arrest for drugs" in 1991.

- Shortly before 5:00 p.m., Servance was observed departing the apartment building alone and driving in the black Mazda to a Wendy's Restaurant. Minutes later, "Servance was joined by a female driving a silver vehicle. The female remained in her car as Servance walked over and handed something through the window to her. She, in turn, handed something back to Servance which he placed in his pocket. At approximately 5:39 p.m., the meeting ... concluded, and both drove away in different directions."

- While the Wendy's meeting was taking place, Trooper Rosario contacted a nearby Baltimore Police patrol car and advised the patrol officers that Servance was "a possible drug dealer [and] was driving on a suspended drivers license." Those officers stopped Servance as he drove away

from the meeting at the Wendy's parking lot.

- After determining that Servance was in fact driving on a suspended license, a Baltimore police officer arrested him. When Servance was patted down, officers found a semi-automatic pistol concealed on him. The firearm was determined to be stolen.
- Incident to Servance's arrest, the Mazda was searched, suspected cocaine base was discovered inside the vehicle, and more than $2,000 in cash was found on Servance. Based upon Trooper Rosario's experience and expertise, he believed the substance found in the Mazda to be crack cocaine.
- At approximately 5:42 p.m., Glover drove a 1991 Nissan Maxima from the apartment building to a mall parking garage in Towson, Maryland. He entered a department store and had not returned to the vehicle as of 9:15 p.m. However, a woman attempted to gain access to the Nissan and explained to VCSSTF officers that "the owner said he could not drive the vehicle away and she was insuring that it was locked."
- In the opinion of Trooper Rosario, Servance and Glover were operating together, drugs were the object of their association, and Apartment L of the Spring Valley Apartments was the center of their drug activities.

The Rosario affidavit applied for two search warrants, the first for Servance's residence at the Spring Valley Apartments, and the second for the 1991 Nissan Maxima driven by Glover on May 7, 1998. Judge Smith, after questioning Trooper Rosario in the Judge's home, and after assessing the materials related to the warrants being sought, authorized a search of Apartment L at 1 Meadow Grass Court of the Spring Valley Apartments. At the same time, however, he denied Trooper Rosario's request for a search warrant for the Nissan automobile. The handwritten search warrant for the apartment was then issued by the Judge, directing the officers to conduct a search of the premises of Apartment L and to seize evidence relating to drug operations, including controlled substances, firearms, money, and drug paraphernalia. The officers promptly searched Apartment L and recovered, *inter alia*, large quantities of cocaine and cocaine base, ammunition, a bullet-proof vest, and personal papers relating to Servance and Glover. On January 22, 1999, in response to Servance's Motion to Suppress, the district court conducted an evidentiary hearing. At that hearing, Trooper Rosario testified at some length concerning his affidavit and the circumstances leading to Judge Smith's issuance of the midnight search warrant for Servance's residence.

The district court thereafter declined to suppress the evidence seized from Servance's residence, ruling that the search warrant had been properly issued and agreeing with Judge Smith that the Rosario affidavit presented "adequate probable cause to justify the warrant to search the apartment." On February 9, 1999, the court memorialized its ruling in its Memorandum and Order Regarding Motion to Suppress. *United States v. Servance*, No. MJG–98–0240 (D.Md. Feb. 9, 1999) (the "Memorandum"). In the Memorandum, the court recited the relevant facts and explained its rejection of Servance's contention that the warrant was constitutionally flawed:

> After the warrant for the apartment was [issued] by Judge Smith, the officers searched the apartment. They recovered from various locations within the apartment more than 700 grams of

cocaine base, more than 400 grams of cocaine, drug packaging paraphernalia, unspent ammunition of a variety of calibers, a bulletproof vest and personal identification in the names of both Defendants.

. . .

This Court agrees with Judge Smith that the affidavit presented adequate probable cause to justify the warrant to search the apartment. Even if one were to disagree with Judge Smith's conclusion, the search would nonetheless be lawful despite Defendant's allegations that the warrant application contained defects because it was based upon a facially valid search warrant.

. . .

In this case, the Defendants have not carried the burden of proof with regard to the recklessness of the affiant. The Defendants have pointed out errors in the affidavit presented to Judge Smith which were neither intentional nor determinative. The affiant erroneously stated that the car occupants had used a key to enter the apartment building. This was of little moment, however, in light of the evidence that Servance had been identified as a resident of Apartment L by a Maryland State Trooper who, by coincidence, was also a resident of the building. The affidavit also misstates the names of the officers—an immaterial matter.

*Servance*, No. MJG–98–0240, at 7–12.

After the Memorandum was filed in the district court on February 9, 1999, and prior to his trial scheduled for February 17, 1999, Servance jumped bond and became a fugitive. A bench warrant was issued for Servance on February 16, 1999, and the trial proceeded as to Glover only. Over three years later, on May 21, 2002, Servance was apprehended.

On October 21, 2002, Servance entered a plea of guilty to Count Four of the indictment, which charged him with being a felon in possession of a firearm. Servance was convicted on the other three charges—Counts One, Two, and Three—after a jury trial lasting from October 21 through 28, 2002. On January 14, 2003, Servance was sentenced to 238 months on Counts One and Two, and 120 months on Count Four, to run concurrently with each other. He was also sentenced to 60 months of imprisonment on Count Three, consecutive to the other three sentences, plus five years of supervised release. Servance has filed a timely appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[1]

On appeal, Servance raises three separate issues, two of which were not properly preserved in the district court. First, he maintains that the handwritten affidavit of Trooper Rosario failed to establish probable cause for the issuance of the search warrant, in that it failed to demonstrate a sufficient nexus between the cocaine substance found in the Mazda vehicle Servance was driving when he was arrested on May 7, 1998, on one hand, and his residence in Apartment L of the Spring Valley Apartments, on the other. Second, he contends that Judge Smith failed to act in a neutral and detached manner when he issued the warrant. Third, Servance asserts that the Government failed to comply

---

1. Although Servance purports to appeal from the judgment imposed on him, this appeal relates only to those aspects of the judgment premised on the jury verdict and the sentences imposed pursuant to Counts One, Two, and Three. Servance's sentence on Count Four, resulting from his plea of guilty on that charge, is not implicated by his contentions on the search warrant, in that the firearm underlying Count Four was seized from him before the warrant was issued.

with its *Brady* and *Giglio* obligations. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

### B.

Before issuing the search warrant for Servance's residence, Judge Smith reviewed and considered the draft document Trooper Rosario carried with him to the Judge's home, and he questioned Rosario on its contents. As a result, Rosario made corrections and revisions to the document prior to executing it as his affidavit. These corrections and revisions, found primarily in the "Facts and Circumstances" section of the affidavit, were as follows:

- On the first page of the handwritten initial draft, the words "[t]he residence can be further identified by your Affiant" were deleted, and the words "Apartment L is located on the upper third floor front right apartment as you face the building" were added by interlineation. Also deleted were references to the 1991 Nissan Maxima, as to which a search warrant was denied.

- On the third page of the draft, the words "after receiving reliable source information indicating that the two individuals were and are involved in drug distribution" were deleted.

- On the fourth page of the draft, the words "as you face the building" and "since at least December, 1997" were added by interlineation to information pertaining to Servance's residence in the Spring Valley Apartments.

- On the fifth page of the draft, the words "may be" and "in fact" were deleted, and the words "was," "accord-

ing to the MVA record," and "Herndon checked the MVA records himself" were added by interlineation to sentences pertaining to Servance's driving on a suspended license and the decision to arrest Servance.

- On the sixth page of the draft, the sentence reading "[a]ll of the property was shown to your Affiant, and based upon your Affiant's experience and expertise the rectangular bar of white substance first wrapped in plastic then wrapped in foil is crack cocaine" was added after the sentence pertaining to the evidence seized from the Mazda.

Finally, the affidavit included the incorrect factual assertion that police officers had observed Servance use a key to enter the apartment building at 1 Meadow Grass Court on May 7, 1998. On October 28, 1998, the prosecutor advised Servance and his counsel of the error concerning those observations. In responding to the motion to suppress the seized evidence, the Government stated in writing that:

> the statement in the affidavit for the search warrant for Apartment L, which says that the defendants were observed entering a specific building using a key, is incorrect. Upon reviewing the reports for that day, [officers] have determined that a key was taken from Servance at the time of his arrest and that it was tested in the front door of the building housing Apartment L. The key fit the door. However, neither Agent Sheehy nor Trooper Rosario, nor any other agent, ever saw Servance or Glover use that key to enter the apartment building.

Gov't's Resp. to Defs.' Mots. to Suppress Evid. at 2 n. 1.[2]

---

**2.** The officer who initially prepared the portion of the affidavit that included the incor-

rect information, Special Agent Robert D. Sheehy of the FBI, testified at the suppression

## II.

We review de novo the legal conclusions of a district court's suppression ruling, and we review for clear error any relevant underlying factual findings. *United States v. Seidman,* 156 F.3d 542, 547 (4th Cir.1998). In conducting such a review, our duty as an appellate court " 'is simply to ensure that the magistrate [Judge Smith] had a substantial basis for concluding that probable cause existed.' " *United States v. Hodge,* 354 F.3d 305, 309 (4th Cir.2004) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In so doing, we are obliged to accord "great deference" to the judicial officer's assessment of the facts in making a probable cause determination. *Id.*

On appeal, we review for plain error only a legal contention which was not raised in the district court, applying the principles of *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The plain error mandate of *Olano* is satisfied if: (1) there was error; (2) it was plain; and (3) it affected the defendant's substantial rights. 507 U.S. at 732, 113 S.Ct. 1770. If these conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

## III.

### A.

Servance's first contention on appeal is that the district court erred when it

declined to suppress the evidence seized from his residence at the Spring Valley Apartments on May 8, 1998, because the affidavit supporting the warrant application did not satisfy the probable cause mandate of the Fourth Amendment.[3] In assessing this issue, we adhere to guiding principles established by the Supreme Court. In *Illinois v. Gates,* the Court explained the controlling totality-of-the-circumstances approach to such issues, under which a court (here, Judge Smith) presented with a search warrant application must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place" based on "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). If such a showing has been made by affidavit, the issuance of a search warrant must be sustained on appeal. *See Owens ex rel. Owens v. Lott,* 372 F.3d 267, 273–74 (4th Cir.2004). In making an appellate assessment of that issue, we accord "great deference" to the issuing judge's probable cause determination. *Hodge,* 354 F.3d at 309. Indeed, law enforcement officers are encouraged to act pursuant to judicial sanction, and searches and seizures carried out pursuant to duly issued search warrants "carry a presumption of legality." *Anglin v. Dir., Patuxent Inst.,* 439 F.2d 1342, 1346 (4th Cir.1971) (upholding seizure of items pursuant to warrant obtained for seizure of other items); *see also United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (endorsing proposi-

---

hearing that he noticed the misstatement on May 8, 1998, and he immediately called the United States Attorney to report it.

**3.** The Fourth Amendment protects against unreasonable searches and seizures, and man-

dates that: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

tion that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall"). We also recognize that an affidavit for a search warrant is not to be interpreted in " 'a hypertechnical, rather than a common-sense, manner.' " *United States v. Lalor,* 996 F.2d 1578, 1581 (4th Cir.1993) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317).

██ Put simply, Servance's contention is that Rosario's affidavit failed to show a sufficient nexus between the cocaine substance seized from the Mazda he was driving on May 7, 1998, on one hand, and his residence in the Spring Valley Apartments, on the other. On this point, the question we must assess is whether Judge Smith was entitled to reasonably conclude that there was probable cause to believe that the items sought by the warrant (including controlled substances, firearms, money, and drug paraphernalia) would be found in Apartment L of the Spring Valley Apartments. *Id.* at 1582–83 (invalidating search warrant for residence where affidavit did not sufficiently indicate likelihood of drug activity therein). In weighing a contention that a sufficient nexus was lacking, we adhere to the principle that " 'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.' " *Id.* at 1582 (quoting *United States v. Anderson,* 851 F.2d 727, 729 (4th Cir.1988)). Indeed, a sufficient nexus may be present even if

the affidavit contains no factual assertions directly linking the items sought to the defendant's residence. *See Anderson,* 851 F.2d at 729 (upholding search warrant for residence after defendant attempted to sell firearm even though affidavit did not link firearm to residence); *United States v. Williams,* 974 F.2d 480, 481–82 (4th Cir. 1992) (upholding search warrant for motel room of known drug dealer where motel receipt was sole connection to defendant).

In this situation, Rosario's affidavit demonstrated a strong connection between Servance and the apartment to be searched. Servance had spent almost four hours in the apartment building before being involved in the suspicious transaction at the Wendy's; he was arrested in the Mazda with drugs, a stolen semi-automatic firearm, and over $2,000 in cash in his possession; and he had a criminal record involving a drug offense. While the apartment to be searched was leased in the name of a female, a resident of the building (Trooper Kirk Bandelin) had identified Servance as a five-month resident of Apartment L.[4] Finally, Glover, who was observed driving with Servance on May 7, 1998, had also engaged in suspicious activities that evening. After Glover drove the Nissan to a mall parking garage and never returned, a woman suspiciously attempted to gain access to the vehicle. In these circumstances, Judge Smith had a substantial basis for concluding that probable cause existed to search Apartment L. According Judge Smith's assessment the deference to which it is entitled,

---

4. A reviewing court is entitled to consider only the information presented under oath to the judicial officer who issued the search warrant. *See United States v. Wilhelm,* 80 F.3d 116, 118 (4th Cir.1996); *see also Owens,* 372 F.3d at 277–78 (reviewing court's assessment of issuing judge's probable cause determination "may not go beyond the information actually presented to the magistrate during the warrant application process"). In that re-

gard, Trooper Bandelin was not identified as a police officer in Trooper Rosario's affidavit or in any sworn testimony otherwise provided to Judge Smith, but as a resident of the Spring Valley Apartments. As a result, we do not consider Trooper Bandelin's status as a police officer in assessing Judge Smith's probable cause determination. *See Wilhelm,* 80 F.3d at 118; *Owens,* 372 F.3d at 277–78.

the contention that his issuance of the search warrant was not supported by probable cause must be rejected.[5]

### B.

 Servance's next contention on appeal is that Judge Smith, in handling the warrant application proceeding in his residence on the evening of May 7, 1998, abandoned his neutral and detached role and improperly assisted Trooper Rosario in rewriting the affidavit. Because Servance did not raise this contention in the district court, we review it for plain error only.[6] As explained below, it must be rejected.

 For purposes of the Fourth Amendment, a judicial officer who issues a search warrant must act in a neutral and detached manner and is not to be " 'an adjunct law enforcement officer.' " *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)). In addressing the neutral and detached issue, both Servance and the Government direct our attention to and rely on the Tenth Circuit's decision in *United States v. Ramirez,* 63 F.3d 937 (10th Cir.1995). There, the court concluded that a magistrate judge's alteration of a warrant applicant's draft affidavit—to authorize officers to search the defendant and seize his key

to a building—did not call into question the judge's neutrality or detachment. *Id.* at 941. In so ruling, the court concluded that the narrative portion of the affidavit established probable cause to believe that the defendant would have possession of drugs or drug paraphernalia, and it characterized the magistrate judge's alterations as "mere common sense extensions of the contents of the narrative portion of the same affidavit." *Id.* By contrast, it is elementary that a judge can overstep his responsibilities and compromise his judicial neutrality if, by way of example, he serves as a leader of a search party, *see Lo–Ji Sales, Inc.,* 442 U.S. at 326–27, 99 S.Ct. 2319, or functions as a " 'rubber stamp for the police,' " *Leon,* 468 U.S. at 914, 104 S.Ct. 3405 (quoting *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)).

On this record, Judge Smith's involvement with the revisions to Rosario's draft affidavit at the Judge's home is a far cry from the conduct which might compromise a judicial officer's neutrality and detachment. *See Lo–Ji Sales, Inc.,* 442 U.S. at 326–27, 99 S.Ct. 2319. First and foremost, when Judge Smith issued the warrant to search Servance's residence in Apartment L, he also denied Trooper Rosario's request for a warrant authorizing a search of Glover's Nissan automobile.[7] Such a com-

---

5. Because we uphold the issuance of the search warrant, we need not address the district court's alternative ruling on the applicability to this proceeding of the "good-faith exception to the Fourth Amendment exclusionary rule" established in *United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

6. In the district court, Servance asserted that "[n]ot only did the affidavit in support of the warrant lack the indicia of probable cause, it also contained a reckless manifestation of the facts." Mem. in Supp. of Mot. to Suppress Evid. at 2. His argument challenging Rosar-

io's affidavit, however, contended only that the affidavit contained "conclusory statements," not challenging the neutrality and detachment of Judge Smith. *Id.* at 9.

7. It is noteworthy that, in an opinion sustaining Glover's conviction in a prior proceeding, we observed that "there was ample evidence to support the officers' belief that probable cause existed when they impounded the car. Additionally, if called upon to determine the issue, we would, on this record, in all likelihood find probable cause present for the impoundment." *United States v. Glover,* 9 Fed.

pelling fact would normally, in and of itself, resolve a contention that an issuing judge lacked impartiality. But here there is a great deal more. The context of the relevant events, particularly the period of time Judge Smith devoted to the warrant applications, amply demonstrates that the warrant was subjected to a careful and cautious judicial process.

Second, Trooper Rosario's corrections and revisions to his draft document, made after he arrived in Judge Smith's home, are readily analogous to the "common sense extensions" to the affidavit discussed in *Ramirez*. For example, Judge Smith apparently deemed the phrase, "after receiving reliable source information indicating that the two individuals were and are involved in drug distribution" as either unnecessary or unsupported, and it was deleted. J.A. 518. In order to provide a more precise description of the property to be searched, Trooper Rosario inserted the words "as you face the building" to particularize the location of Apartment L. J.A. 519. Based on information imparted by Trooper Bandelin, the "resident" of the apartment building, Trooper Rosario added the words "since at least December, 1997" to show how long Servance had been living in Apartment L. *Id.* To specify how the officers learned that Servance was driving on a suspended license, Trooper Rosario added the phrase, "Herndon checked the MVA records himself." J.A. 520. And to show that Trooper Rosario was not one of the officers who had seized the contraband from Servance's car, Trooper Rosario added the words, "[a]ll of

the property was shown to your Affiant." J.A. 521.

In sum, assessed in a commonsense manner, Judge Smith's conduct with respect to the warrant application process was in accord with the applicable constitutional principles. Because the judicial officer who issued the search warrant has not been shown to be either partial or undetached, there was no error committed in the handling of the warrant application. The first prong of the *Olano* test (that an error occurred) is therefore not satisfied, and this contention must be rejected.

### C.

▮▮▮▮ Servance's final contention on appeal is that, with respect to factual inaccuracies in Trooper Rosario's affidavit, the prosecution failed to comply with its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[8] Pursuant to *Brady*, the Due Process Clause of the Fifth Amendment precludes the prosecution from suppressing or withholding evidence favorable to an accused where the evidence is material either to guilt or punishment. 373 U.S. at 87, 83 S.Ct. 1194.

In this regard, Servance first asserts that Trooper Rosario "lied" in his affidavit by implying that there was a credible human source for one aspect of his information, when the actual source was a covert video camera. Second, Servance points to Trooper Rosario's incorrect assertion that, during the afternoon of May 7, 1998, offi-

---

Appx. 167, at *3 n. 5 (4th Cir.2001) (unpublished).

**8.** Servance also purports to rely on *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), to challenge the prosecution's compliance with its disclosure obli-

gations. *Giglio* involved false evidence being presented at trial, however, rather than in connection with a search warrant application. The *Giglio* principle does not contribute to our assessment of this contention.

cers had observed Servance enter the apartment building housing Apartment L. Because Servance did not raise either aspect of this contention in the district court, we review them for plain error only.

As explained below, neither of the statements complained of contravenes the principles enunciated in *Brady*. First, Rosario's affidavit does not mention a confidential informant, and no such information was presented for Judge Smith's consideration. Second, Rosario's statement that Servance and Glover had been observed using a key to enter the apartment building housing Apartment L was not material because the affidavit was otherwise sufficient on the nexus question.[9] Indeed, Servance had been identified as a five-month resident of the apartment building by another resident, and he had spent nearly four hours there before leaving to engage in a drug transaction at the Wendy's. In any event, the Government provided prompt notice to Servance of the factual inaccuracy by its motions response of October 28, 1998. Such notice, accorded to Servance nearly three months before the suppression hearing and nearly four years prior to his trial, was more than ample. Indeed, Servance made use of the inaccuracy contention at both the suppression hearing and at trial, in his cross-examination of Government witnesses. As a result, there has been no showing that material evidence was suppressed by the prosecution, or that false testimony was provided at either the suppression hearing or at trial. Because there was no *Brady* violation, the first prong of the *Olano* test (that an error

occurred) is not satisfied, and this contention must also be rejected.

## IV.

Pursuant to the foregoing, we affirm the district court's denial of Servance's motion to suppress evidence.

*AFFIRMED.*

---

9. The surveillance officers did not observe Servance or Glover enter Apartment L on May 7, 1998. They lost contact with the Mazda while following it, and later spotted it parked in front of the apartment building.

When Servance was arrested, police officers recovered a key which they later found to fit the front door of the apartment building housing Apartment L.