UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4028

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CARLOSE DEMOND ROBINSON,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Henry M. Herlong, Jr., District
Judge.  (CR-03-616)

Argued:  February 1, 2007          Decided:  March 22, 2007

Before WIDENER, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed in part; vacated and remanded in part by unpublished per
curiam opinion.

**ARGUED:** Mario A. Pacella, STROM LAW FIRM, L.L.C., Columbia, South
Carolina, for Appellant.  Isaac Louis Johnson, Jr., Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Greenville, South Carolina, for Appellee.  **ON BRIEF:** Reginald I.
Lloyd, United States Attorney, Columbia, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Carlose Demond Robinson ("Appellant") appeals his convictions for various drug-related offenses and resulting 960-month sentence. He challenges his convictions solely on Fourth Amendment grounds, arguing that the district court should have suppressed numerous pieces of evidence presented at trial. He challenges his sentence on both constitutional and statutory bases under United States v. Booker, 543 U.S. 220 (2005). For the reasons that follow, we affirm Appellant's convictions, but reverse his sentence and remand to the district court.

I

In 2002, Appellant was the target of a joint investigation between the Greenville County Sheriff's Department ("Sheriff's Department") and the U.S. Drug Enforcement Agency ("DEA"). During the course of this investigation the Sheriff's Department secured the cooperation of a confidential informant (the "CI") who was familiar with Appellant. The CI disclosed that Appellant was selling drugs out of an apartment located at 79 Haywood Crossing in Greenville ("79 Haywood"), and officers placed that location under surveillance.

On October 30, 2002, the CI arranged to purchase cocaine from Appellant. Prior to meeting with Appellant, the CI was outfitted with a covert listening device so that officers could listen to and

record the transaction. Appellant and the CI first met in a restaurant parking lot to exchange the cocaine and, several hours later, met at a gas station to exchange payment for the drugs. Appellant drove to the first meeting in a rented Nissan Pathfinder and to the second in a Chevrolet Caprice. For both meetings, Appellant came directly from and returned directly to 79 Haywood. Throughout this period, Appellant was under constant surveillance by a rotating team of officers in different vehicles.

A. The October 30, 2002 Searches

Shortly after returning to 79 Haywood following his second meeting with the CI, Appellant again left the apartment driving the Pathfinder. At that time, Officer Edward Hazel ("Hazel"), a member of the surveillance team, contacted Officer Mark Edwards ("Edwards"), a member of the Sheriff's Department who was previously uninvolved in the investigation, to notify him of the ongoing surveillance. Hazel informed Edwards of Appellant's location, the type of car he was driving, and the fact that he had conducted a drug transaction out of the Pathfinder earlier in the day. Edwards then caught up to the rolling surveillance of Appellant and began following him.

Shortly after Edwards began following him, Appellant made a right turn at a red light without coming to a complete stop. Edwards immediately pulled Appellant over for the traffic

3

violation, approached his car, and requested his driver's license, registration, and proof of insurance. Appellant provided his driver's license, but had no registration or insurance information because the car was rented. After returning to his car and checking Appellant's driver's license, Edwards confirmed that he had pulled over the target of the on going surveillance, and that Appellant had prior weapons and drug convictions.

Edwards then returned to Appellant's car, asked him to exit the vehicle, informed him of his traffic violation, and issued him a citation. Edwards asked whether Appellant had any weapons or drugs in his possession or in the car. Appellant denied having any. Edwards then received Appellant's permission to perform a patdown search, which revealed money, but no contraband.

After Appellant denied him consent to search the Pathfinder, Edwards called for a K-9 unit to come to the scene. Approximately ten minutes later, the K-9 unit arrived, conducted a sweep of the car and alerted to the presence of drugs. Two other officers then arrived on the scene and conducted a search of the Pathfinder, discovering two handguns and several bags of cocaine.

Based on the contraband discovered in the Pathfinder and the fact that Appellant had been at 79 Haywood directly prior to the traffic stop, officers obtained a search warrant for the apartment, where they ultimately discovered cocaine, a digital scale, currency, and paperwork with Appellant's name on it.

4

Officers placed Appellant under arrest that day, but he was released on bond the following day, October 31, 2002.

### B.   The February 1, 2003 Search

In early 2003, the Sheriff's Department was searching for Appellant in connection with an outstanding arrest warrant for murder.   On February 1, 2003, Inspector Collis Flavell met with Wister Gates, an informant who had worked with Appellant in selling narcotics and had been arrested on charges not relevant here. Gates informed Flavell that he had seen Appellant earlier that day at a house located at 16 Bradley Boulevard in Greenville ("16 Bradley").   Gates indicated that Appellant was selling drugs from that residence and described a number of the cars located there.

Flavell and Gates went to 16 Bradley to confirm its physical location.   Flavell later confirmed independently that Appellant was known to use one of the vehicles parked there.   Flavell then obtained a warrant to search for Appellant at the residence.   When executing the search warrant, officers discovered Appellant, a handgun lying in plain view, and $2,800 in Appellant's possession. Officers subsequently obtained two additional search warrants, one to search the full residence for contraband and one to open a safe discovered on the premises.   The execution of those two warrants revealed firearms, ammunition, a drug scale, an additional $24,628, marijuana, cocaine, and various items used to make crack cocaine.

5

## C.  The Trial

On February 10, 2004, Appellant was charged in a superseding indictment with (1) one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846; (2) two counts of possession of cocaine and aiding and abetting in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C); (3) two counts of possession and use of a firearm in furtherance of a drug crime, and aiding and abetting in violation of 18 U.S.C. §§ 2, 924(c)(1); and (4) two counts of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Prior to trial, Appellant filed two separate motions to suppress evidence, one for the fruits of the search of the Pathfinder and 79 Haywood, and one for the fruits of the search of 16 Bradley.  Both motions were denied.  Following a jury trial, Appellant was convicted of all counts in the superseding indictment.

Before Appellant was sentenced, the Supreme Court issued Blakely v. Washington, 542 U.S. 296 (2004), but had yet to decide United States v. Booker, 543 U.S. 220 (2005).  At sentencing, Appellant raised a Blakely objection to the quantity of drugs used and to the government's use of Appellant prior convictions for sentencing purposes.  The district court overruled these objections and sentenced Appellant to a combined 960-month sentence after

finding that he qualified as a Career Offender under U.S.S.G. § 4B1.1 for each of his narcotics violations and an Armed Career Criminal under U.S.S.G. § 4B1.4 for each of his firearms offenses.

This appeal followed.

II

Appellant challenges his convictions on grounds that the evidence underlying each was obtained in violation of his Fourth Amendment rights and should have been suppressed.[1] We will consider each of his arguments in turn.

A.

With respect to the search of the Pathfinder, Appellant argues that Edwards violated his Fourth Amendment rights by detaining him for the period of time necessary for the K-9 unit to arrive on the scene and conduct the sweep of the car. Appellant does not dispute that, up to that point, Edwards was justified in detaining him to investigate his traffic infraction. However, Appellant contends that once Edwards concluded the routine traffic stop, he was without authority to continue the detention. The government counters that Appellant's criminal activity and pattern of behavior earlier in the day created sufficient reasonable suspicion of

---

[1] We have reviewed the remainder of Appellant's arguments and find that they are without merit.

ongoing criminal drug activity to justify the detention under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  We agree with the government.

Consistent with the Fourth Amendment protection against "unreasonable searches and seizures," U.S. Const. amend. IV, officers can briefly detain a suspect in order to investigate a reasonable suspicion that criminal activity is afoot.  <u>Terry</u>, 392 U.S. at 30.  When a routine traffic infraction is involved, "an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation.  Any further investigative detention, however, is . . . illegal unless the officer has a reasonable suspicion of other criminal activity or . . . consent" from the suspect.  <u>United States v. Foreman</u>, 369 F.3d 776, 781 (4th Cir. 2004).  Indeed, although the sweep of a car by a drug dog is not a search for Fourth Amendment purposes, "in order to perform the sniff, there must be a seizure of the vehicle and, therefore, the person, requiring either consent to be detained or reasonable suspicion."  <u>Id.</u>

There is no dispute that Appellant did not consent to being detained for the period of time necessary for the K-9 unit to arrive and sweep the Pathfinder.  Therefore, we must determine whether the detention was lawful under <u>Terry</u> by analyzing whether it was "[1] justified at its inception [(i.e., whether reasonable suspicion was present)], and . . . [2] was reasonably related in scope to the circumstances which justified the interference in the

first place." Terry, 392 U.S. at 20.  We consider each element in turn.

First, the continued detention was justified because Appellant's actions on the day in question created a reasonable suspicion that he was engaged in ongoing criminal drug activity. To establish reasonable suspicion, an officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant . . . intrusion" on a suspect's Fourth Amendment rights.  Terry, 392 U.S. at 21.  "The officer must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." Wardlow v. Illinois, 528 U.S. 119, 123-24 (2000) (internal quotations omitted).  The requisite "level of suspicion," however, "is considerably less than proof of wrongdoing by a preponderance of evidence," United States v. Quarles, 330 F.3d 650, 653 (4th Cir. 2003) (internal quotations omitted), and "can arise from information that is less reliable than that required to show probable cause."  Alabama v. White, 496 U.S. 325, 330 (1990). Reasonable suspicion is determined based on the totality of the circumstances, id., and may be based on the collective knowledge of officers involved in a single investigation.  See United States v. Hensley, 469 U.S. 221, 232 (1985).

Taking into account the collective knowledge of the officers involved in the investigation of Appellant, the following

9

circumstances informed Edwards's decision to detain Appellant: (1) a reliable CI told officers that she could purchase drugs from Appellant; (2) the CI was quickly able to arrange such a transaction; (3) Appellant delivered drugs to the CI in a rented Pathfinder; (4) Appellant used a separate car to retrieve the money for the drugs from the CI a short time later; (5) after each step of the transaction with the CI, Appellant returned to 79 Haywood; and (6) just prior to the traffic stop, Appellant left the apartment driving the Pathfinder that he had used to deliver drugs to the CI. Taken together, these facts support a reasonable suspicion that Appellant was engaged in ongoing drug dealing and was using the Pathfinder to conduct his business. Consequently, it was reasonable for Edwards to suspect that Appellant was likely in possession of drugs at the time of the traffic stop and detain him based on that suspicion.

Second, the length of Appellant's detention fell well within the scope of lawful police action under the Fourth Amendment. The permissible scope of a Terry stop is "strictly tied to and justified by the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19 (internal quotations omitted). We have previously upheld the investigative detention of an individual suspected of drug activity, along with his luggage, for thirty-eight minutes while officers awaited the arrival of a K-9 unit to sweep for drugs. United States v. McFarley, 991 F.2d 1188,

10

1193-94 (4th Cir. 1993).  In <u>McFarley</u>, we found the scope of the detention reasonable because there was no evidence that officers unduly extended the defendant's detention or failed to act with diligence in conducting their investigation.  <u>Id.</u> at 1194.  The same reasoning controls here.

Edwards detained Appellant for approximately ten minutes while waiting for the K-9 unit to arrive.  Although there is no indication in the record of how much time the dog sweep took, all of the evidence in the record suggests that Edwards and the other officers acted with diligence in investigating their suspicions. Conversely, there is no evidence that Edwards or the other officers detained Appellant for any longer than necessary.  Therefore, based on <u>McFarley</u>, we conclude that Appellant's detention was reasonable in scope.

Ultimately, we find no merit in Appellant's argument that his detention during the traffic stop violated the Fourth Amendment.


B.

Appellant next argues that, because the government offered no evidence on the K-9 unit's training or certification, the district court erred in finding that the dog sweep of the Pathfinder provided probable cause to search the vehicle.  Appellant waived this argument by failing to raise it below.  <u>Muth v. United States</u>, 1 F.3d 246, 250 (4th Cir. 1993) (argument raised for first on

appeal waived absent showing of plain error or fundamental miscarriage of justice). Our review of Appellant's two motions to suppress and the transcripts of the hearings thereon reveals no challenge to the credentials of the K-9 unit. Indeed, Appellant failed to raise any objection to Edwards's testimony at the suppression hearing regarding the K-9 unit's alert on the Pathfinder. We therefore conclude that Appellant waived this argument and find no basis to conclude that the admission of K-9 alert evidence constitutes either plain error or a fundamental miscarriage of justice.

C.

Appellant next argues that the affidavit filed in support of the search warrant for 79 Haywood did not establish a sufficient nexus between the contraband found in the Pathfinder and the apartment. We find no merit to this argument.

> In weighing a contention that a sufficient nexus was lacking, [w]e adhere[] to the principle that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.

United States v. Servance, 394 F.3d 222, 230 (4th Cir. 2005), vacated on other grounds 544 U.S. 1047 (2005) (internal quotations omitted). We have previously recognized that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when an "affidavit [supporting a search] warrant contains no

12

factual assertions directly linking the items sought to the defendant's residence." Id. at 394 F.3d at 230 (emphasis added). Where a direct link is lacking, probable cause is inferred from the surrounding circumstances. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). These principles control here.

The affidavit filed by Investigator C.J. Todd, who was also involved in the investigation, was sufficient to support probable cause. In relevant part, Todd stated that officers had surveilled both Appellant and 79 Haywood in connection with a drug investigation. He went on to state that officers discovered cocaine in Appellant's car after he had driven away from 79 Haywood and before he had made any intervening stops. These facts established a sufficient link between 79 Haywood and Appellant's criminal activity to support probable cause to search that location for additional contraband. See United States v. Grossman, 400 F.3d 212, 218 (4th Cir. 2005) (holding it reasonable to suspect that a drug dealer stores drugs in a residence to which he has access). Therefore, we do not find the search warrant for 79 Haywood defective.

D.

Appellant next challenges the warrant issued to search 16 Bradley solely on grounds that officers failed to corroborate the underlying information provided by Gates. We find no merit to this

13

argument.  There is no set requirement that officers corroborate all information underlying a search warrant.  United States v. Perez, 393 F.3d 457, 462 (4th Cir. 2004).  A search warrant properly issues when there is probable cause to believe that a certain item or items can be found at a certain location.  United States v. Wylie, 705 F.2d 1388, 1392 (4th Cir. 1983).  Although officers can seek a search warrant based on hearsay or information received from informants, United States v. DeQuasie, 373 F.3d 509, 518 (4th Cir. 2004), officers need not corroborate or confirm every underlying fact.  Perez, 393 F.3d at 462.  Here, the facts underlying the warrant supported the search of 16 Bradley.

As related in the affidavit accompanying the search warrant application, Flavell learned from Gates both that Appellant was living at 16 Bradley and the description of a number of cars parked there.  Flavell drove Gates to the residence to confirm its physical location and determined that Appellant was known to use one of the cars parked there.  These facts would lead a reasonable person to conclude that Appellant was either living at or conducting business out of 16 Bradley, and could likely be found there.  Therefore, we conclude that sufficient probable cause existed to support the search warrant for 16 Bradley.[2]

_____

[2]Because we find that the searches of 79 Haywood and 16 Bradley did not violate the Fourth Amendment, we decline to reach the government's argument that Appellant lacked standing to challenge each because he had no reasonable expectation of privacy in either residence.

Robinson next challenges his sentence under <u>Booker</u>, 543 U.S. 220, on both constitutional and statutory grounds. Because Appellant raised an objection based on <u>Blakely</u>, 542 U.S. 296, at his sentencing hearing, we review his arguments for harmless error and will reverse if the error affected Appellant's substantial rights. <u>United States v. Rodriguez</u>, 433 F.3d 411, 415-16 (4th Cir. 2006). The government bears the burden of demonstrating that any error was harmless. <u>Id.</u>

Appellant first argues that the district court violated the Sixth Amendment by making improper findings of fact regarding his prior convictions for purposes of the U.S.S.G. §§ 4B1.1 and 4B1.4 sentencing enhancements. Appellant does not argue that the district court engaged in improper fact-finding regarding a discrete aspect of his prior convictions, such as whether his prior convictions qualified as violent felonies for purposes of U.S.S.G. § 4B1.4. <u>See</u> <u>United States v. Thompson</u>, 421 F.3d 278, 284 (4th Cir. 2005) (analyzing whether district court properly classified defendant's prior state conviction for breaking and entering as a violent felony). Rather, he argues that the Sixth Amendment required the district court to submit the basic fact of his prior convictions to the jury. This argument is foreclosed by <u>Shepard v. United States</u>, 544 U.S. 13, 20 (2005), where the Supreme Court held that a district court can rely on the fact of a prior conviction

for sentencing purposes without submitting it to a jury. See also Thompson, 421 F.3d at 283 (discussing and applying Shepard). Therefore, we find no Sixth Amendment error.

Appellant next argues that the district court committed statutory Booker error by treating the sentencing guidelines as mandatory. This argument has merit. Under Booker, "statutory error occurs when a sentencing court treats the Guidelines as mandatory, rather than as advisory." United States v. Sullivan, 455 F.3d 248, 265 (4th Cir. 2006) (citing Booker, 543 U.S. at 245-46). The district court here clearly treated the guidelines as a mandatory limitation on its sentencing discretion. See J.A. 575 ("[T]hat is the minimum sentence I could have given him."). Because the district court made no indication of how it would have sentenced Appellant under an advisory guidelines regime and the government has not otherwise demonstrated harmless error, we conclude that statutory Booker error is present and affected Appellant's substantial rights.[3] Therefore, we must vacate Appellant's sentence and remand for resentencing. Sullivan, 455 F.3d at 266.

---

[3]We note that, although it contested the presence of statutory Booker error in its brief, the government conceded this issue at oral argument.

IV

For the foregoing reasons, Carlose Demond Robinson's convictions are affirmed, and his sentence is vacated and remanded.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART