**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4747

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMAL LARONNE RAY, a/k/a Jamal Douglas,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Robert C. Chambers, District Judge. (3:05-cr-00163-1)

Argued: May 25, 2007                    Decided: July 24, 2007

Before MICHAEL and DUNCAN, Circuit Judges, and Frank D. WHITNEY, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jonathan David Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Steven Ian Loew, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant-appellant Jamal LaRonne Ray a/k/a Jamal Douglas entered a conditional plea of guilty to the crime of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), subject to his right to appeal the district court's denial of his motion to suppress two firearms seized during a search of his home.[1]  Finding no error, we affirm.

I.

On May 22, 2005, after attending a high school prom, four youths were shot to death in Huntington, West Virginia.  On July 25, 2005, Shannon Dennis admitted to investigators that he witnessed defendant commit the murders, assisted defendant in fleeing the murder scene, and threw the murder weapon into the Ohio River.

Based on Dennis's statement and other evidence, on July 26, 2005, Sergeant Rocky Johnson of the Huntington Police Department applied to a Cabell County Circuit Judge for a search warrant of defendant's residence at 1891 Marshal Avenue, Huntington, West Virginia.  Sergeant Johnson's Affidavit and Complaint for Search Warrant read:

> On May 22nd at approximately 0430 hours, four separate [sic] victims were shot to death at 1410 Charleston Ave. Victims were Donte Ward, Eddick Clark, Megan Poston, and Michael Dillon.  During the investigation, numerous interviews were conducted and information to believe

---

[1]Defendant was sentenced to thirty-four months imprisonment and three years of supervised release.  He does not appeal his sentence.

2

[sic] that Ward had been shot in retaliation for taking a large amount of marijuana from Cherylethia "Bunny" Holmes. Holmes admitted to investigators that she had been robbed of marijuana from her apartment on Charleston Ave. On 7-5-05 Det. R. Knight received information from a co-operating witness that a Shannon Dennis bragged about driving a suspect vehicle involved in the homicide to the scene and away from the scene. Dennis also bragged that he threw the murder weapon in the Ohio River. On 7-25-05 Shannon Dennis gave a voluntary statement to detectives that he had witnessed "T" aka Jamal Douglas murder the four victims. Dennis admitted that he threw the murder weapon in the Ohio River. Dennis admitted that they left the area in a white 1987 Chevy Monte Carlo with gray interior. On Friday 7-22-05 Detective Hunter identified "T" as Jamal Douglas during a traffic stop in 1600 block of 9th Ave. The listed vehicle has been painted blue since the time of the homicides. At the time of the warrant vehicle is parked in front of 1891 Marshal Ave. There is an HPD police report from early 14 July 2005 in which Douglas was involved in an accident driving the listed white Monte Carlo 1987 model bearing WV reg 7JC-620.[2]

---

[2]In addition to the evidence set forth in the Affidavit and Complaint for Search Warrant, Sergeant Johnson also swore to the following in the Search Warrant:

On May 22nd at approximately 0430 hours, four separate [sic] victims were shot to death at 1410 Charleston Ave. Victims were Donte Ward, Eddrick Clark, Megan Poston, and Michael Dillon. During the investigation, numerous interviews were conducted and information was obtained that led investigators to believe that Ward had been shot in retaliation for taking a large amount of marijuana from Cherylethia "Bunny" Holmes. Holmes admitted to investigators that she had indeed had marijuana taken from her home on Charleston Ave. On July 5th 2005 Det. R. Knight received information from a co-operating witness that a Shannon Dennis bragged about driving a suspect vehicle involved in the homicide to the scene and to throwing the murder weapon into the Ohio River. On 7-14-2005 a cooperating witness provided information that a B/M named T or Trouble, later identified as Jamal Douglas, stated that he murdered the four victims over a drug debt owed by Ward. On 7-25-2005 Shannon Dennis gave a voluntary statement to Detectives that he witnessed "T" aka Jamal Douglas murder the four victims. Dennis admitted that he threw the murder weapon in the Ohio River. Dennis admitted that they left the area in a white Chevy Monte Carlo, 1987 model with gray interior.

3

Sergeant Johnson's affidavit requested to search defendant's residence for the following evidence:

> Guns - ammo - clothing - fibers - blood - hair - personal items of victims, shoes, drugs - newspaper articles concerning the homicide - cell phones - cell phone bills - any documentation concerning drug transactions - money from drug related crimes - drug paraphernalia - indicia of residency - photograph of Douglas and criminal associates.[3]

Based upon Sergeant Johnson's application, Cabell County Circuit Judge David Pancake issued the search warrant on July 26, 2005.[4]

During the search of defendant's residence, the investigators found a .40 caliber semi-automatic pistol and a 7.62 mm rifle. Because the warrant allowed for the seizure of evidence of "[g]uns"

---

> On Friday 7-22-2005 Officer Hunter positively identified "T" as Jamal Douglas during a traffic stop in 1600 block of 9[th] Ave. At the time Douglas listed his address as 1891 Marshal Ave.

[3]The Search Warrant listed the evidence sought from the search as:

> Guns - ammo - clothing - fibers - blood - hair - personal items of victims, shoes, drugs - newspaper articles concerning the drug transactions - money from drug related crimes - drug paraphernalia - indicia of residency - photograph of Douglas and criminal associates.

[4]Defendant contends that there was something nefarious about Sergeant Johnson taking his application for a search warrant to a county circuit judge at his home, a judge who did not regularly carry a criminal docket, rather than routinely to an on-duty magistrate. The government noted at oral argument that Sergeant Johnson actually thought he was exercising more caution by presenting the application to a circuit judge instead of a magistrate. It is of no importance one way or the other so long as the judicial official was neutral and detached. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326 (1979).

and the investigators knew defendant was a convicted felon, the investigators seized the two weapons.

II.

Defendant raises two issues regarding the district court's denial of his motion to suppress: (1) the affidavit of Sergeant Johnson was insufficient to show probable cause that evidence of the quadruple homicide would be located at defendant's residence; and (2) the affidavit intentionally mislead the judge who issued the search warrant.

A.

Although this Court reviews de novo a district court's legal finding of probable cause that evidence of a particular crime may be at a particular place, this Court's primary duty is to ensure that the issuing court had a substantial basis for concluding probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). Viewing the totality of the circumstances, the issuing court must believe that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. The reviewing court must give great deference to the issuing court's "assessment of the facts presented to [it]." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990).

The question of "nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir.

5

1988), cert. denied, 448 U.S. 1031 (1989).  Specifically regarding residences, "our cases indicate that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to defendant's residence.'"  United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quoting United States v. Servance, 394 F.3d 222, 230 (4th Cir. 2005)).

In the instant case, there was sufficient evidence of probable cause that defendant was involved in the four homicides.  There was: one, Shannon Dennis's statement to law enforcement, even if tainted by his complicity in the murders; two, the corroborating statement from the cooperating witness; three, the Huntington Police Department (HPD) accident report of July 14, 2005, confirming defendant drove the suspected getaway vehicle – a white 1987 Chevy Monte Carlo bearing West Virginia tag 7JC-620 – painted blue after the homicides and the accident but before the search; and four, at the time of the application for the search warrant, the fact that the suspected getaway vehicle was parked in front of defendant's residence.

There was also sufficient evidence of probable cause linking defendant's alleged involvement in the four homicides with defendant's residence.  Even though our cases show that no direct linkage is necessary between a suspect's residence and the items sought, in this case the getaway vehicle's location in front of the residence did provide a direct nexus.  Even without the direct

6

nexus of the vehicle, the list of items sought for seizure included things – such as clothing, fibers, blood, and hair – which an issuing judge could always reasonably infer would be at a suspect's residence.

Beyond personal items such as clothes and beyond bodily evidence, we also have previously held that an issuing court may reasonably infer that a firearm and its accoutrements – a silencer – may be stored at a suspect's residence. <u>United States v. Anderson</u>, 851 F.2d at 729. Nonetheless, assuming *arguendo* the unlikely notion that an issuing judge could <u>not</u> reasonably infer that weapons would be stored at a suspect's residence, the investigators, knowing defendant was a convicted felon, could still take custody of the weapons when they discovered them in the course of the lawful search for clothing and bodily evidence.[5]

We conclude that the issuing state court had a substantial basis for finding probable cause and that the district court did not err in denying the motion to suppress.[6]

## B.

Defendant also argues that Sergeant Johnson's affidavit intentionally misled the issuing court. We disagree.

---

[5]Although defendant contends that the investigators should not have been looking for any weapons in the first place since Dennis had told them that he threw the murder weapon in the Ohio River, once again, during their lawful search for other items such as clothing they could and should seize the weapons knowing defendant was a felon.

[6]Because we affirm the district court's probable cause ruling, we need not address the applicability of the good faith exception raised by the government.

7

When raising a Franks v. Delaware challenge to a search warrant affidavit, a movant by preponderance of the evidence must show: one, "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and, two, that the offending information was essential to the probable cause determination. 438 U.S. 154, 155-56 (1978); see also United States v. Shorter, 328 F.3d 167 (4th Cir.), cert. denied, 540 U.S. 928 (2003). We defer to the district court to determine whether a Franks hearing is necessary, based on a movant's substantial preliminary showing of misrepresentation. United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). When a district court holds a Franks hearing, we review the district court's factual findings for clear error. United States v. Jones, 913 F.2d 174, 176 (4th Cir. 1990).

In the instant case, on December 15, 2005, the district court held a suppression hearing. After defendant made a substantial preliminary showing at the suppression hearing justifying a Franks hearing, the district court continued the trial date and adjourned the suppression hearing to allow defendant time to prepare for the Franks hearing. On February 6, 2006, providing ample time to defendant to prepare, the district court held the Franks hearing. At the hearing, after the district court correctly instructed defendant that defendant had the burden of proof, defendant presented witnesses.

Defendant's key material claims of intentional misrepresentation involve the omission from Sergeant Johnson's

8

affidavit of two statements made by Dennis's estranged wife – Allison Dennis - to investigators.[7] The affidavit omitted, one, that Allison Dennis had told investigators that Dennis "was a liar and lied about everything" (Defendant-Appellant's Brief at 17-18) and, two, that she had told investigators that Dennis was with her the day of the murders "until I went to sleep." Joint Appendix ("J.A.") at 104.

(1) As to the first omission – that Allison Dennis said her husband was a liar – Sergeant Johnson's affidavit was silent in all respects as to the credibility of Shannon Dennis. There was no statement in the affidavit asserting that Dennis was a credible and tested informant. Thus there was no affirmative misrepresentation about his credibility. As the district court found as a matter of fact:

> [I]t's clear that there was ample information provided to the police, but most of it was inconsistent and contradictory. The information was provided over the course of several weeks following the murders.
>
> The Court would find in this case that all of this conflicting information was not required to be part of any application for an arrest or a search warrant.
>
> * * *
>
> Further, the Court finds in this case that to the extent information was — that the primary claim here was that critical information was omitted, not that there was false information submitted to the issuing judge. That's an important distinction.

---

[7]Defendant also asserts that there was conflicting evidence from other witnesses. As the district court noted, there was much contradictory evidence. None of that evidence, however, was material to the assertions in Sergeant Johnson's affidavit. Thus it is unnecessary for us to address the other witnesses' allegedly conflicting evidence.

The Court does not see that there was anything false in the affidavit provided to the judge. What was in there was at least literally true insofar as the information having been provided to the police. When reviewing the sufficiency of information in this context, there's an important distinction between providing false information or omitting information. Providing false information is much more likely to cause a magistrate or an issuing judge to be misled, much more indicative of an intent to mislead. I don't see any evidence that that was the case here.

J.A. at 139-40.

The district court continued, "the Court would find that the defendant has failed to show, first, that the information was false. . . . Therefore the defendant can't show that Sergeant Johnson or others lied about Mr. Dennis and his statement. . . . There is no evidence that [Sergeant Johnson or any investigator} lied about his statement." J.A. at 141.

We have long held that the omission of exculpatory information is far less likely to raise a <u>Franks</u> inquiry than the inclusion of false or misleading information. <u>Colkley</u>, 899 F.2d at 301-02. The fact of omission alone does not demonstrate intentional misrepresentation. <u>Shorter</u>, 328 F.3d at 171. Even if the omission was intentional misrepresentation, a movant only prevails if inclusion of "the omitted fact . . . would have negated probable cause." <u>Id</u>.

Furthermore, although Dennis's statement was tainted in the one respect that he could have been trying to shift blame for the murders to defendant, his statement was reliable in the other respect that he was admitting to being an accomplice in a quadruple murder. <u>United States v. Harris</u>, 403 U.S. 573, 583 (1971).

10

Issuing courts must tolerate the possible inaccuracy of an informant's evidence so long as the issuing court is not deliberately misled. Colkley, 899 F.2d at 303.

Finally, while Dennis's statement was the single most important evidence in the affidavit, adding to the affidavit that Dennis was a suspected liar would not have negated probable cause since a separate cooperating witness corroborated Dennis's statements.

(2) As to the second omission – that Allison Dennis told investigators that Dennis was with her the day of the murders – the evidence at the Franks hearing also showed that Allison Dennis told the investigators in the same interview that she was really not certain that Dennis was with her that day because they had been "split up for a while." J.A. at 108. In fact, she admitted during cross-examination in the Franks hearing that they had "split up because Shannon [Dennis] was on drugs pretty bad at that time." Id.

Since Allison Dennis herself was inconsistent in her statement to the investigators, as the district court found, her inconsistent statements simply did not need to be included in the affidavit.

The district court was not clearly erroneous in finding that the omitted statements were not intended to mislead and deceive the issuing court.

Accordingly, we affirm the district court's denial of defendant's motion to suppress.

AFFIRMED